James Mark TAYLOR, Respondent,

v.

Deanna K. TAYLOR, Appellant.

No. WD 57447.

Missouri Court of Appeals,
Western District.

Aug. 22, 2000.

Barbara L. Teeple, Tipton, for appellant.

Karen M. Hunt, Sedalia, for respondent.

Before VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and LAURA DENVIR STITH, Judge.

JOSEPH M. ELLIS, Judge.

James Mark Taylor (Husband) and De-anna K. Taylor (Wife) were married on August 24, 1985, in Sedalia, Pettis County, Missouri. The parties first separated on April, 15, 1997, reconciled briefly, and then separated again on August 19, 1997.

During the marriage, Husband and Wife acquired a used car dealership known as Mark's Used Cars and Trucks, doing business under the corporate title of Mark Taylor, Inc. Each owned half of the business. Husband and Wife also acquired the following four parcels of real estate, the first three of which are located in Pettis County: the marital residence and seven acres, 61.66 acres of undeveloped land, a 60,000 square-foot tract of land, and a lake cabin in Camden County, Missouri. Other marital property included farm implements, a boat, trailers, horses, home furnishings, pets, and various items of personal property.

Mr. Taylor filed a dissolution action on August 19, 1997. The couple did not have children. Neither party requested maintenance or attorney's fees. The trial court divided all the marital and non-marital property and ordered the marriage dissolved on June 10, 1999. The court awarded the dealership, all of its assets, and the real estate on which it was located to Husband. He also received the real estate located in Camden County and numerous items of personal property. The court awarded Wife the marital home and the surrounding acreage, a car, and numerous items of personal property. Wife appeals.

## Standard of Review

Appellate review of a judgment of dissolution is guided by the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); therefore, we will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Laffey v. Laffey,* 4 S.W.3d 655, 657–58 (Mo.App. W.D.1999). The appellant bears the burden of demonstrating error. *Taylor v. Taylor,* 12 S.W.3d 340, 344 (Mo.App. W.D.2000). We review the evidence in the light most favorable to the trial court's ruling, disregarding contrary evidence. *Laffey,* 4 S.W.3d at 658. We give deference to the trial court's decision, even if the evidence could support a contrary conclusion. *Id.*

## I. Property Division

In her first point on appeal, Wife claims the trial court erred in its property

division because it failed to value property, undervalued property, failed to include property in its division, or made improper credits, resulting in an inequitable division of the marital assets. We will interfere with the trial court's division of the property only upon a finding that it is "so 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.'" *Finnical v. Finnical,* 992 S.W.2d 337, 343 (Mo.App. W.D.1999)(*quoting Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App. W.D. 1998)). "An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Silcox v. Silcox,* 6 S.W.3d 899, 905 (Mo. banc 1999) (*quoting Sola v. Bidwell,* 980 S.W.2d 60, 66 (Mo.App. W.D.1998)). The trial court's division is presumed correct and the challenging party bears the burden of overcoming this presumption. *Laffey,* 4 S.W.3d at 659.

### A. Overall Fairness

■ Wife challenges the overall fairness of the trial court's division of property. Section 452.330 applies to the division of marital property in a dissolution proceeding and provides, in pertinent part:

[T]he court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital proper-

ty, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1.[1] In this case, factor five need not be considered because the marriage produced no children. The parties also entered a pre-trial stipulation precluding testimony of marital misconduct by either party, except as such conduct related to the marital property or its division.

Wife argues that, despite the trial court's statement that it considered § 452.330's provisions in its division of the property, the court failed to explain the factors upon which it based its division in its findings of fact and conclusions of law. She claims that a review of the record establishes that the relevant factors do not justify such an inequitable division in favor of Husband. The court awarded Wife $264,949.19 (43%) of the marital property, and it awarded Husband $345,208.69 (57%) of the marital property.

Wife argues that there is no real indication that the court did in fact consider the factors listed in the statute and if the court had considered the first four factors it would have awarded a greater share of the marital property to her instead of to Husband. She contends, first, that the economic circumstances of the parties should have resulted in an award of a greater share of the marital property to her. Wife notes that Husband's adjusted gross income for 1997 was $74,301.00, the majority of which was derived from the marital business. She also points out that the dealership is the only income-producing asset of the parties, and the court awarded the dealership to Husband. Wife, a licensed practical nurse, received an income

1. All statutory references are to RSMo Cumulative Supplement (1999) unless otherwise indicated.

of $20,859.00 in 1997. At trial, Wife testified that she earned sufficient money to provide for her own needs and that she did not request maintenance.

Second, Wife claims that no evidence was presented that Husband contributed significantly more to the acquisition of the marital assets than did Wife. The trial court found that the success of Mark's Used Cars and Trucks resulted from Husband's efforts alone, and noted that Wife did not dispute this testimony.

Third, Wife argues that the value of the non-marital property set aside to the parties does not support the trial court's division of the property. The court did not assign values to the non-marital property. Wife contends that there was not a substantial amount of non-marital property set apart to either party, and, therefore, this factor cannot justify the trial court's property division.

And finally, Wife asserts there was evidence of marital misconduct by Husband related to the marital property. Husband testified that he removed marital and personal property from the marital home after the parties separated, including several vehicles owned by the marital business. Wife also claims that Husband secreted income from the marital business by falsifying sales reports filed with the State and by denying that the dealership had receivables secured by liens on automobiles sold.

■■■ The trial court in its judgment stated that it had "consider[ed] all of the provisions of [§ 452.330] in making its determination of property." Moreover, the court stated it "finds [the] division of property and debt to be fair considering all the circumstances." The trial court possesses great flexibility in its division of marital property. *Laffey*, 4 S.W.3d at 659. In evaluating the factors set out in § 452.330, there is no specific formula for a court to follow in determining the weight to be given to the various factors. *Id.* Moreover, these factors are not exclusive. *In re Marriage of Baker*, 986 S.W.2d 950, 957

(Mo.App. S.D.1999). The court's division of the property must be fair and equitable given the circumstances of the case, but need not be equal. *Silcox*, 6 S.W.3d at 904; *Laffey*, 4 S.W.3d at 659. "That one party is awarded a higher percentage of marital assets does not *per se* constitute an abuse of the trial court's discretion." *Laffey*, 4 S.W.3d at 659 (emphasis in original). In fact, in *Nelson v. Nelson*, we noted that appellate courts in this state "routinely affirm highly disproportionate divisions of marital property," and we cited numerous cases for that proposition. *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App.W.D. 2000).

■■■ The trial court's judgment reveals that the court did consider the relevant factors. The court acknowledged that Wife earns less as a licensed practical nurse than Husband does from the marital business. Moreover, the trial court also expressly stated it did not find any misconduct on the part of Husband in the form of hiding marital property or secreting income from the family business. While there is no express finding that either Husband or Wife contributed substantially more to the acquisition of marital property, the court did state that the success of the marital business, Mark's Used Cars and Trucks, resulted from Husband's efforts alone. The court did set aside to each party their non-marital property. It is apparent to us that the court considered all the relevant factors listed in the statute. *See Laffey*, 4 S.W.3d at 659. "The award cannot be considered deficient for its failure to announce that it was made in accordance with the statutory factors." *Starrett v. Starrett*, 703 S.W.2d 544, 548 (Mo.App. E.D.1985); *see also In re Marriage of Clark*, 801 S.W.2d 496, 500 (Mo. App. E.D.1990).

■■■ After determining that the court considered all the relevant factors, we must look at whether there was sufficient evidence under the factors to support the trial court's award. We must keep the

following in mind when we are evaluating the sufficiency of the evidence under the relevant factors. We presume that the trial court considered all the evidence in its division of marital property. *Nelson*, at 517. There is no formula respecting the weight to be given the relevant statutory factors, thus, the trial court is permitted to attach any amount of weight it deems appropriate to those factors listed in the statute. *Brown v. Brown*, 14 S.W.3d 704, 707 (Mo.App.S.D.2000) (citations omitted). Moreover, the court is not limited to considering only the factors listed in § 452.330.1, hence, the factors are not exclusive. *Id.* " 'As long as the record contains credible evidence upon which the trial court could have formulated its beliefs, this court will not substitute its judgment for that of the trial court.' " *Nelson*, at 518 (*quoting Patton v. Patton*, 973 S.W.2d 139, 145 (Mo.App. W.D.1998)).

A complete review of the record indicates that there was sufficient evidence to support a disproportionate division of the marital property. Because Wife and Husband had no children, and the trial court found no marital misconduct, and there was no significant amount of non-marital property awarded to either party, logically, the most important factors for the trial court to consider were those in § 452.330.1(1) and (2). The court found that Wife's income was substantially smaller than Husband's income from the marital business, however, the court also found that the marital business' success was wholly attributable to Husband's efforts and actions. In light of this finding, a disproportionate division of 57% of the marital property to Husband and 43% of the marital property to Wife is not so unduly weighted in favor of Husband as to amount to an abuse of discretion. *See Silcox*, 6 S.W.3d at 904–05.

For the foregoing reasons, we cannot say the trial court did not consider all the relevant factors in § 452.330.1, nor can we find that the trial court abused its discretion in awarding a disproportionate share of the marital property to Husband. We find no abuse of discretion. Point denied.

Next, we address the specific property at issue on appeal:

**B.**

■ Wife argues the trial court erred in awarding her personal property twice, once as marital property and once as non-marital property. In its "Judgment, Findings of Fact, [and] Conclusions of Law," the trial court awarded Wife the china as marital property valued at $400. Then, the court found the same china to be non-marital property and set it off to Wife without assigning it a value. The court also awarded Wife a diamond tennis bracelet valued at $3,000 as marital property and again set the same tennis bracelet aside to Wife as non-marital property.[2]

■ In a dissolution of marriage proceeding, the court must award each spouse their non-marital property and then the court must divide the remaining marital property in a just manner after considering all the relevant factors listed in § 452.330.1. § 452.330.1; *DeMayo, v. DeMayo*, 9 S.W.3d 736, 739 (Mo.App. W.D. 2000); *In re Marriage of Below*, 8 S.W.3d 233, 235 (Mo.App. E.D.1999). Thus, the court must make a specific finding on whether each asset or class of assets is marital or non-marital property. *In re Marriage of Below*, 8 S.W.3d at 235. It is error for the trial court to award the same piece of property to Wife, once as marital property, and once as non-marital property. *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App. W.D.1995).

Upon remand, the trial court should first classify the china and the diamond tennis

2. Wife argued at trial that the bracelet was a gift from Husband and is therefore non-marital property while Husband argued the bracelet was an investment and should be considered marital property.

bracelet as either marital or non-marital property and then distribute them accordingly.

■ In addition to the duplicate classification of the diamond tennis bracelet, Wife argues the $3,000 value assigned the bracelet is against the weight of the evidence. She argues the only evidence of the bracelet's value was Husband's proposed value of $2,000. A trial court may not assign a value to property that is not supported by the evidence. *Lewis v. Lewis*, 978 S.W.2d 64, 66 (Mo.App. W.D.1998). The trial court erred in assigning the bracelet a value of $3,000 because the only evidence presented at trial valued the bracelet at $2,000. On remand, the court should assign a value to the bracelet that is consistent with the evidence presented.

### C.

*$10,000 cash:* Wife claims the trial court erroneously excluded $10,000 in cash from its award of marital property to Husband. At the time Husband filed for divorce, the parties withdrew $20,000 in cash of marital funds from their safety deposit box. Husband and Wife each took $10,000. Wife requests that Husband's award be increased by $10,000.

Wife's contention is devoid of merit. In her proposed property division, Wife listed $10,000 cash as her marital property and $100,000 cash as Husband's marital property. In his proposed property division, Husband included $100,000 in cash of Mark Taylor, Inc. as his marital property. It is clear Husband and Wife both included the $10,000 withdrawn and distributed to Husband in Husband's $100,000 cash amount. Therefore, the trial court did not exclude Husband's $10,000 from the division.

### D.

■ *Hot tub, trash compactor, and refrigerator:* Wife asserts the trial court erred in awarding Husband a hot tub valued at $1,000 as marital property, an unvalued trash compactor as non-marital property, and in awarding Wife a refrigerator valued at $325.00 as marital property. Wife claims that each of these items was included in the appraisal of the marital residence appraised at $137,500.

In appraising the marital home, the appraiser made two separate calculations. The first was a cost approach and the second was a sales comparison analysis. The appraiser's final appraisal, and the appraisal adopted by the trial court was the value calculated under the sales comparison analysis. Under this analysis, the appraiser compared the Taylor house to three other comparable homes in the same area of town. The appraisal report specifically referenced the hot tub, the refrigerator, and the trash compactor. The appraiser adopted the $137,500 valuation after considering these three items in the marital home. Husband did not object to this appraised value, and the trial court also accepted this value in awarding the marital residence to Wife.

Because the appraisal of the marital home took into consideration the hot tub, the trash compactor, and the refrigerator in making its appraisal, the value of those items, if awarded individually, should be subtracted from the value of the marital home. It is unlikely that the value of the home would be reduced dollar for dollar by the value of the individual items. However, on remand, the court should consider the value of these items in valuing the marital home that was awarded to Wife, *see Welsh v. Welsh*, 869 S.W.2d 802, 806 (Mo.App. E.D.1994), as well as the value of the trash compactor awarded to Husband.

### E.

■ *AAL Mutual Fund:* Wife claims the trial court erred in finding that the AAL Mutual Fund in Wife's name was marital property and awarding her the proceeds of the account as marital property. Wife testified that the funds belonged to her grandmother, and, after her grandmother's death, she closed the account and

the funds were placed in a savings account at Union Savings Bank. There was a conflict in the evidence regarding whether Wife's grandmother's name was ever on the accounts. Moreover, the latter account was closed after the parties' separation but before the dissolution. The trial court was free to believe or disbelieve Wife's testimony and obviously found it less than credible. We defer to the trial court's determination on such matters.

### F.

■ *Payments for judgment and attorney's fees:* The trial court ordered Husband to pay a judgment against the parties in the amount of $9,180.00 in favor of B & P Excavating and associated attorney fees in the amount of $6,497.50. Wife contends that the trial court erred in crediting Husband with fifty percent of payments for the judgment and associated attorney's fees. The assertion is undeserving of extended comment. The attorney fees were incurred defending both Husband and Wife and the judgment was against both Husband and Wife. There was no abuse of discretion.

### G.

■ *Payments on cabin during separation:* Wife claims that the trial court erred in crediting Husband with fifty percent of the payments, $2,863.60, he made on the parties' cabin property during their separation, and with crediting Wife with fifty percent of the payments, $673.75, she made on the cabin during separation. Wife contends that uncontroverted facts establish that the parties paid these sums with marital property, and, therefore, the amounts should not have been credited to each of the parties. Husband testified at trial that he used marital funds to make mortgage payments and pay for his living expenses during the separation. The funds included income in the form of lease payments from the dealership and from Husband's monthly salary drawn from the dealership. The parties jointly owned the real estate on which the dealership was located, and the parties received $650 per month lease payments from the dealership on this property.

The evidence presented showed that the parties paid these sums with funds acquired during the marriage. Even income earned by a spouse is marital property up to the date of dissolution. § 452.330.3; *See Sumners v. Sumners,* 701 S.W.2d 720, 722 (Mo. banc 1985). Therefore, we find the trial court erred in crediting Husband and Wife with the payments on the cabin prior to the date of dissolution as separate property. *See Reynolds v. Reynolds,* 861 S.W.2d 825, 828 (Mo.App. E.D.1993) (Trial court erred in crediting Husband for his contributions to mortgage payments on marital property during separation because Husband's earnings constituted marital property prior to date of dissolution). Upon remand, the court should amend the judgment to remove these credits to the parties.

### H.

*Trust account and bank account:* Wife claims the trial court erred in failing to include in the marital assets $1,959.05 held in attorney Karen Hunt's trust account and a savings account with a balance of $1,190.90. At some point during the separation, Husband set up a savings account (No. 0123836) in which he deposited marital funds valued shortly before the dissolution at $2,940.71. Just prior to the dissolution, Husband withdrew $1,959.05 from the account and placed it in an attorney's escrow account for payment of real estate taxes. The trial court awarded account No. 0123836, with a balance of $2,940.71, as marital property to Husband. It appears the trial court did not take account of the withdrawal and deposit to the attorney escrow account because it made no award of those funds. While the court did award all the money in existence, it did not designate the source properly. On remand, the trial court should award Husband the money from the joint savings

account No. 0123836 (previously account No. 23216) and the money from the escrow account.

## I. Business Valuation

*Vehicle inventory:* Wife contends the trial court erred in accepting as accurate Husband's inventory list, valuing the dealership's inventory at $270,203.00, with a floor plan debt of $111,750.00. Wife valued the inventory at $266,250.00, with a floor plan indebtedness of $98,100.00. The court determined that the marital business had no value in excess of the value of its inventory assets. In its judgment, the court found that the "correct valuation of the inventory is $180,000.00 after having subtracted the floor plan indebtedness on the inventory." The court then goes on to find that Husband failed to include a 427 engine in the inventory, and, therefore, the court added Husband's value of $1,000 for the engine to the inventory. Wife claims that, because the court found the business furniture to be worth $3,000, the court implicitly found that this amount should also be added to the value of the inventory. Wife argues, and Husband concedes, that subtracting his calculation of the floor plan debt from his value of the inventory results in a net inventory value of $158,-453.00. Wife argues, therefore, that the trial court erred in valuing the inventory at $180,000.

A trial court is " 'prohibited from entering a valuation of…property not supported by any evidence at trial.' " *Lewis,* 978 S.W.2d at 66 (*quoting Brennan v. Brennan,* 955 S.W.2d 779, 783 (Mo.App. E.D.1997)). When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence. *Wofford v. Wofford,* 991 S.W.2d 194, 200 (Mo.App. W.D.1999). Adding the court's net inventory value of $180,000.00 with its valuation of the floor plan debt of $111,750.00, the total value comes to $291,750.00, which is outside of the range of evidence presented.

The court found that "the nature of the business causes daily changes in the inventory and [the court] accepts Petitioner's inventory list of vehicles as accurate." The court also accepted Husband's calculation of the floor plan indebtedness and found it to be $111,750.00. In light of the fact the court indicated that it accepted Husband's values for the inventory and floor plan indebtedness, the court's assigned net inventory value of $180,000 is against the weight of the evidence. Upon remand, the trial court should correct the inventory value to reflect its acceptance of Husband's values for the inventory and floor plan debt. The court should also add $1,000 to Husband's net inventory value in light of the court's determination that $1,000 should be added to the inventory for the 427 engine, and should take into consideration the business furniture valued at $3,000 in valuing the business.

*Automobile liens:* Wife claims that she presented substantial evidence that the dealership owned accounts receivable secured by liens on automobiles sold. While Wife did present evidence on this issue, it was countered by Husband's evidence to the contrary. The trial court obviously found Husband's evidence credible and substantial. We review the evidence in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences. We cannot say the trial court's decision on this issue is against the weight of the evidence.

*Dealership checking account:* Wife argues the trial court failed to value the dealership's checking account and include the account's value in the valuation of the dealership. At trial, Husband testified that he uses the funds in the account to run his business, including paying for cars, employee checks, taxes, the lease payment, and other business expenses. The court found the account "to be a necessary part of the ongoing business of Mark's Used Cars and Trucks, and the $32,778.19 was used for business expenses following the parties' separation." It appears the trial

court found that the funds in the checking account had been used for business purposes and no longer existed and therefore did not expressly award the dealership checking account to either party. On the other hand, it was part of the business which was awarded to the Husband. The only question is whether the trial court considered a value for the account in valuing the business. Since the court must again value the business on remand, it can clarify the issue.

■ *Certain vehicles not included in inventory:* Wife contends the trial court failed to consider evidence establishing that Husband's inventory list excluded certain vehicles owned by the dealership. She claims Husband's inventory list failed to include the value of a 1996 Chevrolet Corsica titled to the dealership and a 1998 Mercury Villager for which a site draft had been issued by the dealership.

At trial, counsel for Wife asked Husband if the 1996 Corsica was on his inventory list. He responded, "I hope it is." After examining the list, Husband admitted the vehicle was not on his inventory list. He testified that the value of the Corsica was between four and five thousand dollars. Husband also testified that the 1998 Villager was not on the list. He explained that he purchased the Villager on a site draft for $6,000, and he does not yet own it. He stated that, even though he put other vehicles purchased on site drafts on his list, he did not put the Villager on the list because it was not at his car lot. On remand, the trial court should include the 1996 Corsica and 1998 Mercury Villager, less any related obligations such as the $6,000 site draft, in valuing the business.

■ *Expert testimony regarding value of inventory:* Wife claims the trial court erred in accepting Husband's valuation of the inventory over the testimony of Wife's expert and Husband's own expert. "The trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of marital property in a dissolution proceeding, and can disbelieve expert testimony." *Wofford,* 991 S.W.2d at 200. The trial court was entitled to believe Husband's testimony valuing the inventory at $270,203.00 as of the date of trial.

*Floor plan debt:* Wife claims the trial court erred in accepting Husband's valuation of the floor plan indebtedness at $111,750 because no evidence supported this finding. The court found that the "[e]vidence of the floor plan debt of the day prior to trial…was presented by Union Savings Bank records." Wife contends that all of the evidence presented at trial established a floor plan debt of $98,100 as of the day before trial. Union Savings bank records and the testimony of Lasandra Marsh, a Union Savings bank representative, establish a floor plan debt of $98,100. In addition, Husband's testimony indicates a $13,000 debt owed to Walt Allee on a vehicle. Wife claims Husband failed to identify the vehicle for which the $13,000 debt is owed and offered no corroborating evidence, and, therefore, the $13,000 should not have been included in the floor plan debt.

■ Husband's valuation of the floor plan debt was $111,750. The trial court was entitled to believe Husband's assertion, and Husband, as owner of the business, was competent to testify as to its value, including its debt. *Id.*

■ *Secreted income:* Wife claims the trial court's finding that there was no proof that Husband had secreted income from automobile sales is against the weight of the evidence. Wife claims this finding is against the weight of the evidence because she produced substantial evidence that Husband falsified sales information on a routine basis on the Dealer's Monthly Sales Report submitted to the Missouri Department of Revenue. Wife argues that, at trial, counsel confronted Husband with sixteen instances where he submitted sales reports that reported "Trade" as the net price of automobiles sold when the

corresponding title applications gave a dollar amount for the net price, totaling $83,810. Wife contends that $83,810 should be added to the value of the dealership.

At trial, Husband testified that it is his standard practice to write "Trade" as the net price on the sales report, even if cash is also received in the deal. Husband also testified that he contacted Leo Grothaus, a criminal investigator with the Missouri Department of Revenue and explained to Mr. Grothaus the procedure he used. Husband stated that Mr. Grothaus told him that this practice was "fine" and that "you can show it that way because the actual trade difference that you get is reported to the state on the title application that you fill out." Husband testified that the money he received from customers would be placed in the bank within a week. Over the noon recess, Husband and his counsel randomly picked six vehicles to demonstrate that Husband deposited the money from vehicle sales into a bank account. Husband presented evidence that he would either write "Trade" or provide a net price on the sales report, record the amount received for the vehicle on the title, then deposit the money into the bank. In some cases, the amount deposited exceeded the amount reported on the title. Husband explained that the money received above the amount recorded on the title represented amounts received for warranty sales.

In its findings of fact, conclusions of law, and judgment, the court noted that Wife attempted to establish that Husband submitted false affidavits to the State and pocketed the money. The court stated that Husband "presented proof of bank deposits and testimony of the corporation's tax accountant that both inventory and [Husband's] income are consistent with the sales and inventory throughout the years of doing business, including the years up and through 1997 when [Wife] was bookkeeper for the business." The court noted that Husband testified that information related to trades is included on the title

applications but is not required on the sales reports. The court found "the bank records consistent with [Husband's] testimony and evidence presented and [found] no proof of any additional cash inventory hidden by [Husband]."

Husband produced evidence in the form of bank records to establish that he did, in fact, deposit the money he received on vehicle sales into the bank, rather than taking the money for his own use. The court found no proof that Husband secreted any additional cash inventory. The court's findings are not against the weight of the evidence.

*Dealership funds used for personal expenses:* Wife claims the trial court undervalued the dealership by its failing to include the value of dealership funds taken from the business account by Husband to pay personal expenses during the separation. At trial, Husband admitted using funds from the business account to pay attorney's fees to Mr. Fritz, for representation in the B & P Excavating Suit, and Ms. Hunt, counsel representing him in the dissolution proceeding. He also admitted paying $7,000.00 out of the business account to the Internal Revenue Services for his personal income taxes.

As with the business checking account, it is difficult to tell how the trial court evaluated this evidence in valuing the business but the court will have the opportunity to clarify the matter on remand.

■ *Intentional increase in floor plan debt:* Wife also claims the trial court undervalued the dealership by failing to find that Husband intentionally increased the floor plan debt of the dealership in anticipation of the dissolution proceeding. Wife argues the evidence established that Husband typically paid down the principal of the floor plan debt at the end of each year. Wife points out that in 1995 and 1996 Husband paid down his debt at the end of each year. She also notes that in August 1997, the month prior to Husband filing for divorce, the principal on the debt was

$3,300.00, and the principal remained at that amount until the end of 1997. Wife emphasizes that Husband ended 1998, one and one-half months prior to the dissolution proceeding, with a floor plan debt of $98,700.00.

At trial, Husband testified that the floor plan debt increased in 1998 because he was increasing the dealership's inventory to help expand his business. The trial court was free to believe Husband's testimony that he increased the debt in order to increase his inventory for a business purpose, and, therefore the trial court did not err.

### J.

Other business in Kansas City: Wife contends the trial court erred in failing to value another business Husband owns in Kansas City and adding the value of such business to the marital assets. At trial, Husband testified that "I have a man that works for me in Kansas City, and I have to——I've been getting up at 5:30 in the morning and driving to Kansas City and being there by 8:00 when that car dealership is open." Wife says this proves that Husband has another business in Kansas City. Husband contends that he does not own any other business. Husband claims that he goes to Kansas City almost daily because he has a buyer in Kansas City, and he purchases vehicles for Mark's Used Cars and Trucks. The trial court was free to believe Husband's testimony and did not err in failing to find the existence of such a business.

### K.

House in Sedalia: Wife argues the trial court failed to consider evidence of Husband's ownership of a house at 2004 South Warren in Sedalia, Missouri. Here again, there was conflicting evidence and Wife asks us to believe her version. Under our standard of review, we cannot do so. The trial court did not err in ruling that Husband did not own the home.

### II. Rebuttal Testimony

In her second point on appeal, Wife claims the trial court erred in admitting in rebuttal the testimony of two of Husband's experts regarding the value of items of marital property. She contends the trial court erred because Husband failed to disclose the experts in his answers to interrogatories, and he offered both of the experts' testimony to verify testimony presented in his case in chief, rather than to rebut any new evidence presented by Wife.

During their cases in chief, both Husband and Wife presented evidence regarding the value of motorcycles, a boat, and a boat trailer. Husband and Wife presented conflicting valuations of these items. Husband called Rick Yeager as a rebuttal witness to verify Husband's value of Harley-Davidson motorcycles listed in his property list. Counsel for Wife objected, asserting that Yeager should not be permitted to testify as an expert witness when he was not disclosed as such in the interrogatories. Counsel for Husband indicated that Yeager was called to verify Husband's valuation of the motorcycles. The court determined Yeager was a proper rebuttal witness and overruled the objection.

Husband also called Peggy Sharp as a rebuttal witness to verify his valuation of a boat and trailer. Counsel for Wife objected, again arguing that a witness should not be permitted to testify as an expert unless disclosed in the interrogatories. Counsel for Husband responded that Sharp could provide rebuttal evidence to verify Husband's valuation of the boat and trailer on his property list. The court once again overruled the objection.

The admissibility of rebuttal evidence is within the discretion of the trial judge, and, absent an abuse of discretion, we will not reverse the trial court's decision. *State v. Petty*, 967 S.W.2d 127, 140–41 (Mo.App. E.D.1998); *Bray v. Bi-State Development Corp.*, 949 S.W.2d 93, 100–01 (Mo.App. E.D.1997). "A party is

entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." *Bray*, 949 S.W.2d at 101. The trial court has considerable discretion to admit or exclude rebuttal testimony that a party had available and should have offered in its case in chief. *Edley v. O'Brien*, 918 S.W.2d 898, 907 (Mo.App. S.D.1996).

Prior to trial, Husband knew the valuations Yeager placed on the motorcycles and Sharp's valuations of the boat and trailer. Husband could have notified Wife during interrogatories that he intended to call them as expert witnesses. However, the fact that Husband could have called them as expert witnesses during his case in chief does not mean that the trial court abused its discretion by allowing their testimony during rebuttal. Husband and Wife presented conflicting evidence as to the value of the items. Moreover, even if it was error, it could not have been prejudicial because Husband had already testified to the same values. We cannot say that the trial court abused its discretion in allowing the testimony of Yeager and Sharp in rebuttal to counteract Wife's valuations of the motorcycles, the boat, and the trailer. Point denied.

### III. Attorney's Fees

In her third point on appeal, Wife claims the trial court erred in assigning her to pay her own litigation expenses. She argues that Husband should have been ordered to pay her expert witnesses' fees because his financial resources significantly exceed her own resources. A court may award attorney fees in a dissolution case after considering all relevant factors, including the financial resources of each of the parties. *§ 452.355.1*, RSMo (Cum. Supp.1999). Section 452.355.1 provides, in pertinent part, that:

> Unless otherwise indicated, the court from time to time after considering all relevant factors, including the financial

resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415....

Wife contends that the trial court made no specific findings of fact demonstrating that it considered all of the relevant factors listed in § 452.355.1 in its determination not to award her attorney's fees. According to Wife, the evidence indicates that the court failed to consider the enumerated factors. She points out that Husband's income was more than three times greater than her income, he received a greater portion of the marital assets, including the income-producing assets, and his expert utilized the inventory list compiled by her expert.

As a general matter, parties to a dissolution proceeding pay their own attorney's fees. *Silcox*, 6 S.W.3d at 905. "A trial court is given considerable discretion in the award of fees, and is considered an expert on the necessity, reasonableness and value of fees, and its award will be reversed only on a determination it abused its discretion." *Thomas v. Thomas*, 989 S.W.2d 629, 636 (Mo.App. W.D.1999). In order to establish an abuse of discretion, the complaining party must demonstrate that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Taylor*, 12 S.W.3d at 348.

The trial court's decision not to award attorney's fees to Wife does not appear so unreasonable and arbitrary as to shock our sense of justice, and, therefore, we conclude the trial court did not abuse its discretion by declining to award her attorney's fees. Point denied.

### IV. Husband's Request for Attorney's Fees on Appeal

In his brief, Husband asserts that Wife has refused to turn over the property and

assets awarded to him by the trial court, that he has been without such property and assets for an extended period of time, has been required to expend funds to replace property, and incurred substantial attorney fees in defending not only this appeal but allegations made by Wife to various state departments and banking institutions. He asks that we award him $15,000 for his attorney fees and expenses for these burdens. Husband will have the opportunity to file an appropriate motion in the trial court on remand seeking redress of these matters. The trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate. *Ritter v. Ritter*, 920 S.W.2d 151, 156 (Mo.App. W.D.1996); *Heilbron v. ARC Energy Corp.*, 757 S.W.2d 294, 296 (Mo.App. W.D.1988).

### Conclusion

For the foregoing reasons, the judgment of the trial court dissolving the marriage of the parties is reversed as it relates to the division of property and the cause is remanded for further proceedings consistent with this opinion.

All concur.