Sandra K. GREINER, Respondent,

v.

Robert F. GREINER, Appellant.

No. WD 62752.

Missouri Court of Appeals,
Western District.

Oct. 19, 2004.

Patricia M. Scaglia, Kansas City, MO, for appellant.

Dennis C. Owens, Kansas City, MO, for respondent.

Before HARDWICK, P.J., SPINDEN and NEWTON, JJ.

LISA WHITE HARDWICK, Judge.

Robert Greiner (Husband) appeals from the judgment dissolving his marriage to Sandra Greiner (Wife). He challenges the division of property and award of maintenance and attorney's fees to Wife. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Husband and Wife were married in 1973. Husband began attending medical school in 1975 and completed a four-year residency in pathology in 1986. Wife worked as a medical technologist to support the family during most of Husband's

medical training.[1] After Husband began working as a pathologist, the parties agreed in 1987 that Wife would no longer work outside the home.

Wife filed a Petition for Dissolution of Marriage on October 1, 2001. After seeking employment for several months, Wife obtained a part-time job at a restaurant in August 2002, earning a projected income of $377 monthly. Husband's income at that time was at least $15,000 monthly, based on his annual earnings of $181,000. The parties continued to share the marital home in Independence until September 2002, when Husband purchased a separate residence in Blue Springs.

After an evidentiary hearing, the court entered judgment on October 18, 2002, dissolving the marriage and dividing the marital estate valued at $444,500. Husband was awarded 51% of the net marital assets, and Wife received 49%.[2] Wife was also awarded periodic maintenance of $3500 monthly and $13,000 in attorney's fees.

On appeal, Husband raises five points challenging the division of property, four points challenging the maintenance award, and one point challenging the award of attorney's fees.

## STANDARD OF REVIEW

■■■ In this court-tried case, we will not disturb the dissolution judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Alongi v. Alongi*, 72 S.W.3d 592, 594 (Mo.App.2002). We must defer to the trial court's credibility determinations and view the evidence in a light most favorable to the judgment, disregarding all contrary evidence and inferences. *Id.* The judgment of the trial court is entitled to deference even if the evidence could support a contrary conclusion. *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App.2000).

## DIVISION OF PROPERTY

■■■ The division of property in dissolution cases involves a two-step process under Section 452.330.1, RSMo 2000. The trial court must first set aside to each party their non-marital property and then divide the marital property and debts after considering relevant factors set forth in the statute.[3] The court has broad discretion in classifying and dividing property. *Jinks v. Jinks*, 120 S.W.3d 301, 305 (Mo. App.2003). The division need not be equal but must be fair and equitable under the circumstances of the case. *Id.* at 306.

■■■ On appeal, we will reverse only if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion. *Alongi*, 72 S.W.3d at 595. The appellate court presumes the trial court's

---

1. The parties had one child, a son born in 1978, who was emancipated at the time of the dissolution.

2. The judgment awarded Husband net marital assets valued at $255,871 and Wife received net marital assets of $188,629. Husband was ordered to pay Wife $27,500 as an "approximate equalization" payment, which resulted in a marital property division of 51% to Husband and 49% to Wife.

3. The relevant factors under Section 452.330.1 include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

division of property is correct, and the party opposing the division bears the burden of overcoming this presumption. *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo. App.2000). A further presumption exists that the trial court considered all of the evidence in dividing the marital property. *Id.* at 518.

Husband raises two points challenging the trial court's classification of certain assets as non-marital or marital property.

First, Husband contends the trial court erred in classifying the entire value of Wife's Phoenix Investment Partners, Ltd. account as non-marital property. The investment account was established in 1972, prior to the parties' marriage, when Wife and her mother each contributed an initial investment of $500. No additional contributions were made during the next thirty years, but the account increased in value from $1,000 to $19,187.95 through reinvestment of dividends. Wife testified that the purpose of the investment account was to assist her parents in retirement.

The trial court classified the investment account as Wife's non-marital property, finding there was no evidence that the funds had been commingled with marital assets or that Wife intended to gift her pre-marital interest in the account to the marital estate. Husband does not dispute that Wife's initial contribution to the account is her non-marital property, but he contends any increase in the account's value during the marriage constitutes marital property regardless of whether it was commingled or gifted into the marital estate.

Missouri law defines marital property as "all property acquired by either spouse subsequent to the marriage." § 452.330.2, RSMo.2000. Property acquired during the marriage is presumed marital unless it falls under one of five statutory exceptions:

(1) Property acquired by gift, bequest, devise or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in the value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

§ 452.330.2.

■ Although the exception in subsection (5) appears applicable in this case, our court has held that the phrase "increase in value" does not include *income* earned during the marriage from property acquired prior to the marriage. *In re Marriage of Schatz*, 768 S.W.2d 607, 611 (Mo. App.1989). Thus, Wife's pre-marital $500 investment may be properly characterized as her separate property, but any interest or dividends she earned from the account during the marriage became part of the marital estate. *Davis v. Davis*, 107 S.W.3d 425, 434 (Mo.App.2003).

■ The trial court erred in assigning the total value of the Phoenix investment account to Wife as her separate property. In awarding the property to Wife, the court should have determined the marital portion of the increased value of the account and then included that amount in the marital property set aside to Wife. However, this error does not require reversal unless it resulted in a property division so unduly weighted in Wife's favor as to indicate an abuse of the trial court's discretion.

*In re Marriage of Gardner*, 890 S.W.2d 303, 306 (Mo.App.1994).

The exact amount of the marital interest in the Phoenix investment account is unclear from the record, but it could be as much as $9,093.93 (based on Wife's one-half share of the $18,187.85 in increased value). The dissolution judgment entered by the trial court indicates that Husband was awarded 51% of the net marital assets and Wife was awarded 49%. If the court had included the increased value of the Phoenix investment account in the marital estate and awarded it to Wife, the property division would have been slightly more equalized with each party receiving 50% of the marital assets. The classification error caused only a 2% differential *in Husband's favor* and did not affect the overall fairness or equity of the property division. We find no grounds for reversal, as the trial court's error did not result in an abuse of discretion in dividing the marital property.

 Husband next contends the trial court erred in including his $3,231 down payment on his new home as a marital asset because "those funds did not exist at the time of trial and had been incorporated into a parcel of real estate that had no equity." He also contends the court double-counted the asset by characterizing the down payment as marital property and then declaring the real estate as Husband's separate, non-marital property.

Husband moved out of the parties' home in Independence and purchased a new home in Blue Springs approximately one month before the court entered the dissolution judgment. The court made findings that the new home was valued at $225,000 and was subject to a mortgage of the same amount. Thus, the home had no equity value at the time of the divorce, even though Husband spent marital funds of $3,231, as a down payment, to acquire the asset.

Contrary to Husband's argument, the trial court did not classify the new home as his non-marital property. The court clearly identified and set aside the parties' non-marital property in section IV of the judgment, and the Blue Springs home is not included therein. In sections V through VII of the judgment, the court identified and divided the marital property. That division included awarding the Independence home to Wife and the Blue Springs home to Husband. The court's marital property division is further summarized in an attachment to the judgment at Exhibit B, which indicates the Blue Springs home was awarded to Husband and that the down payment of $3,231 is included in the value of marital property awarded to him.

The trial court properly characterized the Blue Springs home as marital property because it was purchased during the marriage and with marital funds. While the home had no equity value as a result of the financing terms, the court could reasonably factor in Husband's recent expenditure of $3,231 in marital funds to acquire the substantial asset. We find no classification error and no indication that the court double-counted the value of the new home. Point denied.

 Husband raises three points challenging the trial court's valuation of the following marital property: the parties' home in Independence, Wife's 1992 Oldsmobile Cutlass, and Husband's gun collection. Wife presented evidence in support of her valuation of these property items, but Husband contends his valuation evidence was more credible. As factfinder, the trial court was entitled to believe or disbelieve the evidence presented by either party concerning the valuation of property in a dissolution proceeding. *Wofford v. Wofford*, 991 S.W.2d 194, 200 (Mo.

App.1999). The judgment is entitled to deference because the trial court's valuation of all three property items was within the range of the conflicting evidence presented by the parties. *Booth v. Greene,* 75 S.W.3d 864, 868 (Mo.App.2002). Finding no error or abuse of the trial court's discretion, we affirm the classification, valuation, and division of the marital property.

## MAINTENANCE

In a marital dissolution proceeding, maintenance can be awarded to a spouse who: (1) lacks sufficient property to provide for his or her reasonable needs; and (2) is unable to support him or herself through appropriate employment. § 452.335.1. If this two-part threshold test is met, the trial court then considers the following factors to determine the amount and duration of the maintenance award:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2.

The trial court is afforded broad discretion in awarding maintenance. *Bolch v. Bolch,* 78 S.W.3d 769, 770 (Mo. App.2002). An appellate court should not interfere with a maintenance award unless it is patently unwarranted or is wholly beyond the means of the spouse who pays maintenance. *Id.* The party contesting maintenance bears the burden of proving that the award shocks the appellate court's sense of justice. *Id.*

In his first three points challenging the maintenance award, Husband contends the trial court erred in determining that Wife met the two-part threshold test in Section 452.335. He argues there is no substantial evidence to support the court's findings regarding: (1) Wife's reasonable needs; (2) the extent to which Wife received income producing property; and (3) Wife's inability to support herself through appropriate employment. Husband also contends the court's findings were against the weight of the evidence.

At the dissolution trial, Wife presented evidence that she had $5,181 in monthly expenses and $377 in part-time employment income. Based on the shortfall between her income and expenses, Wife requested maintenance in the amount of $4,500 monthly. Husband challenged the reasonableness of many of Wife's expenses by cross-examining her and presenting contrary testimony. After hearing the conflicting evidence, the trial court determined that Wife's reasonable expenses were in the range of $3,500 to $4,000 and

awarded her monthly maintenance in the amount of $3,500.

 On appeal, Husband argues that Wife's testimony regarding her expenses was contradictory and unreliable because Wife had no firsthand knowledge of many household expenses that were generally paid by Husband. He contends Wife's alleged expenses for utilities, recreation, home maintenance, household goods, yard maintenance, gifts, and telephone services were inflated by as much as $861 monthly.

The trial court apparently agreed with Husband because it rejected Wife's alleged expenses of $5,181 and found her reasonable expenses to be no more than $4,000 monthly. Although the court did not itemize those expenses (and was not required to do so because the parties did not request specific findings), the $1,181 reduction in Wife's expenses even exceeds the amount by which Husband contends the costs were exaggerated. Husband has failed to show any error in the court's determination of Wife's reasonable expenses.

 Husband next contends the court erred in finding that Wife received "little, if any, income producing property." He argues this finding was unsupported by substantial evidence and was against the weight of the evidence because Wife was awarded $224,381.45 in income producing property and yet no income was attributed to such property.

Husband's calculation is based on the total value of all of the bank accounts, stock and bond funds, IRA, and 401k accounts awarded to Wife in the division of marital property. Contrary to Husband's characterization, the record does not establish that all of these assets were income

producing. The only evidence at trial concerning the income producing potential of these assets was Wife's testimony on direct examination:

Q [Wife's counsel]: Contained within the assets which you are requesting that the Court set aside to you, are there any income-producing assets? And I can show you on Exhibit 14, it that's more helpful.

A [Wife]: Can you clarify "income-producing"? Is that interest and dividends?

Q: Yes. That you can receive at the present time.

A: Oh, that we can receive at the present time. (The witness reviewed the document.) *The only one that has an asset that I see that could be received at the present time without penalty and interest is the joint account stock Ameritrade account.*

. . .

Q: How old are you, ma'am?

A: I'm 53. I'll be 54 in November.

Q: Is it your understanding that to withdraw funds from the IRAs that you'd have to pay penalties as well as taxes?

A: And interest, yeah.

(emphasis added). As listed on Exhibit 14, the value of the "Joint Stock Ameritrade" account was $439. Wife's testimony established that this account was the only income-producing asset of the marital property later set aside to her.[4] Husband offered no counter evidence to prove that Wife could receive income from any of the remaining marital assets. Accordingly, the trial court's finding that Wife received little, if any, income producing property

---

4. Wife also testified that she did not know whether Husband's 401k and profit sharing plans could be currently accessed without penalty. Husband produced no evidence to show whether these assets were income-producing.

was supported by the evidence and was not against the weight of the evidence. Point denied.

■ Husband next contends the trial court erred in determining Wife was unable to support herself through appropriate employment. He argues that finding was unsupported by substantial evidence and was against the weight of expert testimony about Wife's potential for employment in her former vocation as a medical technologist. He asserts additional income should have been imputed to Wife based on her potential for full-time employment in the medical profession.

■ To assist in meeting their reasonable needs, a party has a duty to seek full-time employment after a divorce. *Finnical v. Finnical,* 992 S.W.2d 337, 340 (Mo.App.1999). The trial court can consider factors that would affect the party's ability to find appropriate employment and earn a sufficient income to meet his or her reasonable needs. *Id.* at 340–41. Appropriate employment is defined as a job "appropriate to a [person's] skills and interests." *Id.* at 341.

The trial court considered whether a full-time job as a medical technologist was "appropriate employment" for Wife and made the following findings:

> Petitioner [Wife] is now 53 years of age. She has not worked outside the home since mid 1987. Until Petitioner filed for divorce, Respondent [Husband] had no objections to Petitioner's remaining a stay-at-home spouse. Petitioner currently is prescribed numerous medications, for among other things, stress and depression. Petitioner testified that she increases her daily dosage when she is to be in stressful situations.

> Petitioner testified that she never intended or desired to renew her prior employment as a medical technologist.

Petitioner testified to the high stress involved in that profession.

> After Respondent requested [vocational expert] Michael Dreiling [to] conduct an evaluation of Petitioner, she sent innumerable resumes seeking a position as a medical technologist. Petitioner received a total of two responses to her resumes, including one telephone call from a temporary agency; and a request for an interview. Petitioner did not receive any communications after said interview, nor did she followup, as this employer was located twenty-six (26) miles from her home; evening and weekend work would be required; after a tour of the facility, Petitioner was uncomfortable not being familiar with the equipment or routines she observed. Petitioner made applications at other places of employment and recently secured part-time employment, earning an hourly wage as projected by Mr. Dreiling.

In *In Re the Marriage of Zavadil,* 806 S.W.2d 506 (Mo.App.1991), the Court found that the husband's contention that wife could obtain other, more appropriate employment, was pure speculation and was nowhere supported by the record. Similarly in this case, the evidence does not demonstrate Petitioner can or is able to obtain and sustain full-time employment as a medical technologist. Respondent's witness, via deposition, acknowledged the high stress of this employment.

These factual findings are fully supported by evidence in the record. The court properly considered Wife's health problems, low tolerance for stress, and lack of recent employment experience as factors adversely affecting her ability to maintain a full-time job as a medical technologist. Although Husband presented evidence concerning the average salary

and availability of jobs in that profession, his own vocational expert acknowledged that Wife "realistically" would not be able to find a job as a medical technologist without additional training to update her skills and knowledge.

■ The judgment also indicates the trial court properly considered the parties' agreement that Wife would remain unemployed during the last fifteen years of their twenty-nine year marriage. Our court has recognized the "detrimental effect of the withdrawal of a spouse from the job market to assume the duties of a homemaker," which can cause the spouse to be unable to provide for his or her reasonable needs after a divorce. *Thomas v. Thomas,* 76 S.W.3d 295, 301 (Mo.App.2002). In situations where a spouse's marketable skills are injured by a marital agreement to rely on the other spouse and remain out of the workplace, such reliance may warrant an award of maintenance. *Brock v. Brock,* 936 S.W.2d 882, 885 (Mo.App.1997). Even if Wife were able to find full-time employment, Husband's expert testified that Wife's long-term absence from the labor market would likely cause her to earn 40% less than the average medical technologist because of her lack of experience with the technological changes. The evidence clearly established that Wife's marketable skills were devalued and less competitive as a result of the parties' agreement that she would rely on Husband's financial support and not work outside the home.

The evidence supports the trial court's determination that full-time work as a medical technologist was not "appropriate employment" for Wife based on her current skill level, health, and interests. Despite her reasonable efforts to seek full-time employment in the medical profession and other industries, Wife was only able to obtain a part-time job in a restaurant earning $377 monthly. Based on this evidence, the trial court reasonably concluded that Wife was entitled to maintenance because she was unable to support herself through appropriate employment.

■ Husband brings one point challenging the amount and duration of the $3,500 "periodic maintenance" award based on the trial court's alleged failure to properly consider the ten factors listed in Section 452.335.2. He argues there was no substantial evidence to support findings in Wife's favor on many of the factors, and that the court incorrectly weighed the evidence on other factors.

Husband acknowledges that the statutory factors are neither all-inclusive nor mandatory, so the trial court was not required to address each factor. *Monsees v. Monsees,* 908 S.W.2d 812, 818 (Mo.App. 1995). In this case, however, the court made the following specific findings on nine of the ten factors:

a) As stated above, Petitioner [Wife] will receive limited income producing assets;

b) There was no evidence as to the length of time required for Petitioner to acquire training or education to enable her to find full-time employment, nor if she is capable of working full time;

c) The most income Petitioner earned during the marriage was just over $26,000.00. Petitioner has not been employed since early 1988. Additionally, even at the height of Petitioner's full-time employment, she earned less than one-seventh (1/7) of Respondent's [Husband's] present income. There obviously exists a gross and permanent disparity between the parties' capacity to work and earn income. While the Court must consider Wife's needs and Husband's means, it must also bear in mind that

the gross and permanent disparity between the parties' capacity to work and earn is a sound reason for an award of maintenance. (citations omitted).

d) Given the parties' standard of living during the marriage, as well as Respondent's present standard, Petitioner's stated expenses are reasonable.

e) Neither party has any significant pre-marital property.

f) The parties have been married almost thirty years.

g) Petitioner is fifty-three (53) years of age and Respondent is sixty-one (61) years of age. Respondent has had angioplasty in the past, however, he has remained employed full-time, and solely supported his family since early 1987.

h) Respondent has the ability to meet his reasonable needs as well as the needs of Petitioner.

i) Petitioner was a good and loving spouse to Respondent. She supported Respondent in his career changes, and his several moves from the Greater Kansas City area. Respondent's conduct was an issue raised by Petitioner.

We find no error in the trial court's consideration of the statutory factors. Each of the findings is fully supported by evidence in the record. Although Husband vigorously disputed Wife's request for maintenance at trial, the court properly exercised its discretion to weigh the conflicting evidence and make factual determinations, which are entitled to deference on appeal. Viewed in a light most favorable to the judgment, there is substantial evidence to support the award of $3,500 in monthly maintenance to Wife. Husband's point is denied, as the trial court's findings in Wife's favor on nine of the ten statutory factors was not against the weight of the evidence.

## ATTORNEY'S FEES

Husband contends the trial court erred in awarding Wife $13,000 in attorney's fees because it failed to consider the statutory factors in Section 452.355.1. He also argues the award is unsupported by substantial evidence and is against the weight of the evidence indicating that Wife committed financial waste by changing attorneys during the pendency of the dissolution proceedings.

Pursuant to Section 452.355.1, the trial court has discretion to award attorney's fees after considering all relevant factors in a marital dissolution, "including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." The trial court is an expert on the necessity, reasonableness, and value of such fees, and we will reverse its award only for an abuse of discretion. *Taylor*, 25 S.W.3d at 648. To satisfy the abuse of discretion standard, Husband must show that the attorney's fee award was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

Wife presented evidence that she incurred more than $28,000 in attorney's fees during the dissolution proceedings. The trial court awarded her $13,000 in attorney's fees without making specific findings regarding the factors considered. Neither party requested findings pursuant to Rule 73.01 and, thus, we must presume the court considered the relevant factors and evidence and determined the facts in accordance with the judgment rendered in Wife's favor. *Broocke v. Broocke*, 873 S.W.2d 330, 332 (Mo.App.1994).

There is substantial evidence in the record to support the award of attorney's fees based on the gross disparity in earnings between the parties. Husband's annual salary exceeded $181,000, giving him a gross monthly income of at least $15,000. Wife clearly demonstrated that she is unable to meet her reasonable needs with $377 in monthly income from her part-time job. Husband's greater ability to pay is a sufficient basis for awarding attorney's fees in a dissolution action. *Bakula v. Bakula*, 926 S.W.2d 65, 67 (Mo.App.1996).

Husband has failed to present any evidence to rebut the presumption that that trial court considered other relevant factors, in addition to the financial resources of the parties. The fact that Wife was awarded less than half of her requested fees, despite the parties' gross disparity in income, strongly suggests the court considered the possibility that fees were unnecessarily duplicated when Wife changed attorneys. Under the circumstances of this case, allowing Wife to recover $13,000 of her litigation expenses was not so arbitrary and unreasonable as to shock this court's sense of justice. We find no abuse of the trial court's discretion in awarding fees under Section 452.355.1.

## CONCLUSION

The trial court's judgment is affirmed.

ALL CONCUR.