Victor **BRIDGEMAN**,
Petitioner/Respondent,

v.

Consuelo **BRIDGEMAN**,
Respondent/Appellant.

No. ED 78955.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 2, 2002.

Victor Bridgeman, Kenosha, WI, party acting pro se.

Jody H. Wolff, Nelson & Wolff, L.L.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Wife appeals from a decree of dissolution of marriage. On appeal wife first contends that the trial court lacked subject matter jurisdiction because she had not been a resident of Missouri for ninety days before the action was filed. Alternatively, if there was jurisdiction, wife challenges the amounts the trial court used in calculating child support, the denial of maintenance, the failure to order a parenting plan for one of the minor children, the marital debt allocation, and the order conveying title to real property. Husband has not filed a respondent's brief. We reverse that part of the judgment containing the custody order involving one child and remand with directions to complete a parenting plan. In all other respects the judgment is affirmed.

Victor Bridgeman ("husband") and Consuelo Bridgeman ("wife") were married on August 27, 1988 in Kansas. Two of their children had been born prior to the marriage; Angelamarie E. Bridgeman, on October 18, 1983, and Victor L. Bridgeman, Jr., on December 6, 1987. One child, Christian R. Bridgeman, was born during the marriage on October 16, 1990. In 1998 the parties lived in St. Charles County in a house they had purchased. Wife filed for dissolution in the Circuit Court of St. Charles County in March, 1998. The parties attempted a reconciliation and dismissed the dissolution action in November, 1998. From August, 1998 to December, 1998 husband lived in Kansas City to attend an employer training program.

In January, 1999 husband went to Kenosha, Wisconsin to open a new plant for his employer. His employer provided him with an apartment through August, 1999. Wife and children joined husband in Wisconsin in February, 1999. They lived in the employer-provided apartment, but continued to maintain their house in St. Charles and made mortgage payments on it. Husband and wife left their personal property in the St. Charles home.[1] Wife did not want to sell the house while the family was in Wisconsin and turned down every offer to purchase the house, including a full-price offer. In August, 1999 the parties again separated and wife returned to the parties' home in St. Charles, Missouri in August, 1999 with the parties' two sons. In September, 1999 husband moved into his own apartment in Wisconsin. The parties' daughter stayed with him.

On September 15, 1999, husband filed a petition for dissolution and a petition for paternity in the Circuit Court of St. Charles County, Missouri, to which wife filed an answer and counter-petition thirty days later. After a trial the trial court entered a decree dissolving the marriage.

---

1. Husband's property was still in the home at the time of trial.

It also entered a judgment and decree of paternity with respect to the two children born prior to the marriage. In its judgment the trial court found that, at the time the petition was filed, wife was a resident of the state of Missouri and had been for a period of time greater than ninety days. The court awarded joint legal custody of the minor children to both parties and awarded wife primary physical custody of the parties' sons with temporary custody and visitation to husband. The court awarded husband primary physical custody of the parties' daughter with temporary custody and visitation to wife. The court denied wife's request for maintenance and ordered husband to pay $1,463.69 monthly for net child support. The court ordered that wife be covered by husband's health insurance for thirty months.

## DISCUSSION

On review of a dissolution decree, we affirm the decree if it is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares or applies the law. *In re Marriage of Clark*, 801 S.W.2d 496, 498 (Mo.App.1990). We view the evidence and permissible inferences therefrom in the light most favorable to the trial court's decree and disregard all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We defer to the trial court's determination of the credibility of the witnesses. *Rapp v. Rapp*, 789 S.W.2d 148, 150 (Mo.App.1990).

### 1. Jurisdiction

In her first point, wife asserts that the trial court did not have subject matter jurisdiction because neither party was a resident of Missouri for more than ninety days prior to the commencement of the proceedings as required by Section 452.305 RSMo (2000). In support of this contention, wife relies on both husband's and wife's testimony that wife was in Wisconsin with husband until August, 1999, less than ninety days before husband filed this action.

Section 452.305.1(1) requires that one of the parties have been a resident of Missouri for ninety days immediately preceding the commencement of the proceeding. In a dissolution action, the issue of Missouri residency is a jurisdictional fact which must be pleaded and proved. *Lindo–Higginbotham v. Higginbotham*, 9 S.W.3d 620, 621 (Mo.App.1999). When a trial court exercises jurisdiction, we must accept as true any facts which would support jurisdiction. *Id.* at 622.

Both husband and wife alleged and admitted in the pleadings that wife had been a Missouri resident for more than the ninety-day period. Husband testified that wife had been a resident of Missouri for more than ninety days preceding the filing of his dissolution petition. In addition, wife testified that she had been a resident of Missouri for more than ninety days prior to filing her answer and cross-petition for dissolution, which would also include time she was in Wisconsin. Wife contests jurisdiction for the first time on appeal.

We recognize that parties can neither waive nor stipulate to subject matter jurisdiction. *Id.* Furthermore, a party may raise lack of subject matter jurisdiction for the first time on appeal. *Id.* "It is axiomatic, however, that when jurisdiction on the basis of residency is not challenged at trial, the quantum of evidence on the issue of residency will be less than when residency is contested from the beginning of the proceeding." *Id.*

We have held that the term "residence" as used in Section 452.305 is equivalent to "domicile." *Id.* To establish

residency, a party must show actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode. *Id.* A dissolution of marriage decree is void for lack of jurisdiction if it is entered in a state in which neither of the parties to the action are domiciled at the commencement of the action. *Id.*

■ There was sufficient evidence in the circumstances of this case to support the trial court's finding that wife was a resident for the required ninety days. In addition to the parties' testimony, there was other evidence supporting an inference that wife did not intend to permanently or indefinitely stay in Wisconsin. Wife joined husband in Wisconsin, but they lived in temporary, employer-provided housing. Wife refused to sell their home in St. Charles County and returned to that home in August, 1999. Their personal property remained in the St. Charles County home until it was divided by the court in its dissolution decree.

This case differs from *Lewis v. Lewis,* 930 S.W.2d 475 (Mo.App.1996), in which we found the trial court had no jurisdiction over a dissolution action brought by a wife in Missouri after the wife had moved to Colorado in connection with husband's employment. Unlike the parties in the case before us, husband had contested jurisdiction in the trial court. In addition, after moving to Colorado, that wife purchased and improved an expensive home, joined organizations, obtained a Colorado driver's license, and registered to and did vote in Colorado. *Id.* at 477–78.

Here there was no similar evidence. Although courts have also looked at statements of residency on income tax returns, the parties had not filed income tax returns for 1998 or 1999 at the time of trial.

The evidence in this case was sufficient to support the trial court's finding that wife had not abandoned her Missouri residency and was a Missouri resident for the ninety days prior to filing. *See Lindo–Higginbotham,* 9 S.W.3d at 622–23. Point one is denied.

## 2. Child Support

In her second and third points, wife claims that the trial court erred in its calculation of the amount of child support it awarded wife. Wife first asserts that the trial court erred by not including husband's bonus, holiday, and vacation pay in its calculation of husband's gross income which would have increased husband's gross monthly income to $12,548.00 from the $10,442.75 used by the court. Wife next maintains that the trial court's Form 14 calculation was erroneous because the amount used for each child's medical insurance premium in line 6c should have been $90.00, not $16.77.

### a. Bonuses

■ Income, for purposes of computing the presumed child support amount, is defined as "a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children." Mo. R. Civ. P. Form 14, Line 1, Comment A. Bonuses and significant employment-related benefits "may be included, in whole or in part, in 'gross income' in appropriate circumstances." Mo. R. Civ. P. Form 14, Line 1, Directions. Inclusion of bonuses and other employment related benefits in gross income is discretionary. *See McGowan v. McGowan,* 43 S.W.3d 857, 862–63 (Mo.App.2001). In exercising that discretion, a court should consider all relevant factors including:

(4) the realistic expectation that the parent will continue to receive the amount

of the bonuses received during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;....

Mo. R. Civ. P. Form 14, Line 1, Comment D.

The trial court adopted husband's Form 14, which showed $10,442.25 as husband's monthly gross income. Husband testified that he calculated his annual income by dividing his 1999 bonus of $22,000 in half and adding that to his income which consisted of a base salary of $104,000, a $5,000 car allowance, and a $5,000 geographic allowance. Husband testified that he had no holiday income and that he only received vacation pay in 1999 because he had not used his vacation. He testified and the parties stipulated that any future bonus was not guaranteed. He further testified that bonuses were dependent on his employer's, his plant's, and his own performance.

 The trial court may accept or reject the reliability and weight of a pattern of bonus income. *McGowan,* 43 S.W.3d at 863. The trial court did not abuse its discretion in excluding half of husband's 1999 bonus income in calculating his anticipated future income. It further did not abuse its discretion in excluding the amount of husband's 1999 vacation pay in its calculation of his future income. Point two is denied.

b. *Health Insurance Premium*

 At trial husband testified that he was paying $16.77 monthly for each child's health insurance premium and that he calculated this amount by allocating one fourth of his monthly premium to each of the persons covered, himself and the three children. The court used these numbers in calculating child support on its Form 14. Wife argues that the amount of the health care premium for the children was erroneous and should have been $90.00, the full amount of his premium for all family members. We decline to address this point. Wife's contention that the premium for each child should have been $90.00 is not only not warranted by the directions, any increase of each child's allocated premium in the calculation would not increase husband's net monthly child support because line 10 of Form 14 allows the parent paying support a credit in the amount of "total additional child-rearing costs," which includes the health insurance premium. Thus, wife was not aggrieved by the claimed error. A party to a suit must be aggrieved by the final judgment of the trial court in order to appeal. Section 512.020 RSMo (2000); *Harris v. Union Elec. Co.,* 685 S.W.2d 607, 611 (Mo.App. 1985). Point three is denied.

3. *Maintenance*

In her fourth point, wife contends that the trial court erred in finding that she could support herself through appropriate employment and was therefore not entitled to maintenance. Wife also claims that her monthly expenses far exceed her monthly income.

A court may award maintenance, but only if the spouse seeking maintenance lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs and is unable to support herself through appropriate employment. Section 452.335.1 RSMo (2000); *Chapman v. Chapman,* 871 S.W.2d 123, 125–26 (Mo.App.1994).

There was evidence of wife's employment. The parties stipulated that wife received her MBA from Lindenwood College in 1999, that she works forty hours a week, and that she earns $13.00 per hour. They further stipulated that her initial placement was for six months "with an

excellent probability that she will be hired on a full-time permanent basis."

■ However, the record on appeal does not support wife's claim that she could not meet her reasonable needs without maintenance. Wife testified that she could not meet her reasonable needs without maintenance because she had expenses which were listed on an income and expense statement, introduced as Exhibit B. Wife did not include Exhibit B in the record on appeal.

Rule 81.12 requires that the record on appeal contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented to the appellate court for decision. Specifically, the legal file is to contain portions of the trial record previously reduced to written form. *Id.* Rule 81.16 provides that we may consider any exhibits not filed on or before the day of argument "as immaterial to the issues on appeal." Wife's failure to file Exhibit B precludes review of her claim that the trial court erred in not awarding her maintenance. Point four is denied.

### 4. Parenting Plan

In her fifth point, wife claims that the trial court erred in not entering a parenting plan for the parties' daughter. Section 452.375.9 RSMo (2000) requires that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of Section 452.310." Section 452.310.7 RSMo (2000) requires that the parenting plan include a specific written schedule detailing custody, visitation, and residential time for each child with each party.

■ The judgment gave wife temporary custody and visitation with daughter, "the times and dates of which are to be mutually agreed upon by the parties, taking into consideration the minor child's educational and work obligations, and social commitments." The trial court's judgment did not include a specific written parenting plan which set forth the arrangements specified in 452.310.7. Because the trial court erred in failing to include a parenting plan for daughter, as mandated by Section 452.375.9, this case must be remanded with directions to prepare a parenting plan in compliance with Section 452.310.7. *Hollins v. Hollins*, 13 S.W.3d 669, 673–74 (Mo.App.2000); *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo. App.2000). Point five is granted.

### 5. Marital Debt

■ In her sixth point, wife maintains that the trial court erred in dividing the marital debt. Wife argues that the trial court abused its discretion when it awarded her 46% of the marital debt because her gross income is only 15% of husband's. A court is required to divide the marital debt in such proportions as the court deems just after considering all relevant factors. Section 452.330.1 RSMo (2000). We have defined marital debt as debt incurred during or in contemplation of marriage. *Cross v. Cross*, 30 S.W.3d 233, 236 (Mo.App.2000). The trial court has broad discretion in determining how and in what manner the debts should be divided. *Id.* We will not disturb the division of debt absent a clear abuse of discretion. *Id.* Almost all of the debt wife was ordered to pay represents wife's student loans when she obtained her MBA. The trial court did not abuse its discretion in allocating to wife the debt representing her student loans. Point six is denied.

### 6. Motion for Order Conveying Title to Real Property

In her final point wife claims that the trial court erred in granting husband's Mo-

tion for Order Conveying Title to Real Property. Wife argues that the trial court misapplied the law in granting this motion because it did not comply with any of the procedural requirements of Rule 74.04, a rule referenced in the body of the motion. This point has no merit.

 Although a hearing was conducted on this motion, nothing in the record on appeal indicates that the references to Rule 74.04 were brought to the trial court's attention. An appellant must make some effort to bring an alleged error to the trial court's attention in order to preserve it for review. *McMahan v. Missouri Dept. of Social Services, Division of Child Support Enforcement*, 980 S.W.2d 120, 126 (Mo.App.1998).

Furthermore, it is obvious from the content of the motion that it was a motion filed under Rule 74.07 and the references to Rule 74.04 were typographical errors. Rule 74.07 allows a court to enter a judgment divesting the title of any party to real or personal property within the state and vesting it in others in lieu of directing a conveyance thereof. Husband's motion requested this relief and the trial court granted it. The trial court did not err in failing to treat this as a motion filed pursuant to Rule 74.04. Point seven is denied.

*Conclusion*

The judgment of the trial court is reversed with respect to the custody order involving Angelamarie Bridgeman and remanded with directions to complete a parenting plan. The judgment is affirmed in all other respects.

WILLIAM H. CRANDALL, JR., P.J. and ROBERT G. DOWD, JR., J. concur.