**Julie Ruth ALONGI, Respondent,**

v.

**Robert John ALONGI, Appellant.**

**No. WD 59532.**

Missouri Court of Appeals,
Western District,
Division One.

April 9, 2002.

Pamela Lambert, Columbia, for Appellant.

Edwin W. Orr, Columbia, for Respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal follows the dissolution of marriage and division of marital property of Julie Alongi (Wife) and Robert Alongi (Husband). Husband contends the trial court abused its discretion in the property division by ordering a cash equalization payment that placed an unsupportable financial burden on him. We affirm the trial court's judgment.

### Factual and Procedural History

The parties were married on October 7, 1987. Prior to and during the marriage, Husband was self-employed in a rental real estate business known primarily as Rob's Property Management. Wife was employed by the United States Postal Service. As of February 2000, Wife earned a gross salary of $39,084 per year. Husband's earnings were difficult to ascertain, but Wife's expert estimated his disposable

income to be between $50,000 and $85,000 per year.

The parties separated in December 1998, and Wife filed for divorce on January 13, 1999. The primary issues at trial and on appeal surround the division of property.

At the time of the dissolution hearings, the parties owned thirty-eight parcels of real property. It was stipulated that twenty of the properties, with a total equity value of $405,105, were the separate non-marital property of Husband. One property, with a stipulated equity value of $9,908, was the separate non-marital property of Wife. The marital home was in dispute but was determined by the trial court to be marital property. A farm, known as "Murphy Lakes," and the remaining fourteen properties were acquired during the marriage. They were all income-producing properties managed by Husband's business.

After setting aside the stipulated non-marital property to each party, the court found that an equal division of the marital property was appropriate. The court assigned values to the marital real property by averaging the values estimated by Husband and by Wife's expert.

In the First Amended Judgment and Decree of Dissolution of Marriage issued on December 14, 2000, the court divided the marital estate in half and determined that each party should receive $199,105.50, either in property value or cash equivalent. The value of the equity in the property awarded (including real estate, vehicles, farm equipment, debt, and Wife's retirement) to Husband was $239,216 and $158,889 to Wife, leaving a shortfall of equal division to Wife of $40,163.50. Husband was credited with a $5,000 cash advance to Wife from his separate property and was ordered to pay her a lump sum of $35,163.50 to equalize the division. The

court further ordered Husband to pay Wife's attorney the sum of $18,000 toward her legal fees.

On appeal, Husband claims the court's division of property placed an unsupportable financial burden on him. He raises two points of error, asserting the court abused its discretion in failing to consider: (1) the economic circumstances of the parties when it ordered Husband to a cash settlement to Wife, a portion of her attorney's fees, and the credit card debt; and (2) the adverse tax consequences if Husband were required to sell property in order to meet cash obligations under the judgment.

## Standard of Review

We will review and uphold the trial court's determination regarding division of marital property unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo. App. W.D.1997). As the party challenging the decree, Husband has the burden of demonstrating error and must overcome the presumption that the division is correct. *Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo.App. W.D.2000). We must defer to the trial court's determinations of credibility and view the evidence and permissible inferences in the light most favorable to the decree, disregarding all contrary evidence and inferences. *Id.* at 518.

## Point I: Economic Circumstances of the Parties

Husband does not claim the equal division of marital property and debts was against the weight of the evidence or otherwise improper. Rather, he argues the court abused its discretion in "the manner of the division."

Specifically, Husband claims error in awarding a lump sum cash payment to Wife of $35,163.50 and attorney's fees of $18,000, while also requiring Husband to pay more than $127,000 in credit card debt. Since the court made no provision for periodic payments, the Amended Judgment left Husband with $53,163.50 of obligation which was immediately due and payable. He contends there was nothing in the record to demonstrate his ability to generate the cash required to pay the judgment. He argues the credit card debt assigned to him represented expenses related to the marital rental properties, which were so heavily encumbered that he had no ability to borrow further using them as collateral.

Husband asserts the desirable goal in dividing marital property is to avoid placing an unsupportable financial burden on one of the parties. *Fowler v. Fowler*, 732 S.W.2d 235, 238 (Mo.App. S.D.1987). While a trial court has discretion to order cash payments to effect a just division of marital property, Husband contends such a method is typically used when it is impossible or imprudent to divide a piece of property in kind. *Reeves v. Reeves*, 904 S.W.2d 412, 413 (Mo.App. E.D.1995). Where a party is unable to make a lump sum payment, as Husband argues is true here, courts have ordered periodic payments. *Beckman v. Beckman*, 545 S.W.2d 300, 301–02 (Mo.App. E.D.1976). Or, additional real property could have been awarded to Wife instead of the cash payment.

Section 452.330,[1] directs a trial court to divide marital property in a just manner after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

■ The trial court is vested with considerable discretion in dividing marital property, and this court will interfere only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Crews*, 949 S.W.2d at 663. An abuse of discretion is "an erroneous finding and judgment which is clearly contrary to the facts and circumstances before the court—a judicial act which is untenable and clearly against reason and which works an injustice." *Beckman*, 545 S.W.2d at 301.

**A. Husband's Ability to Pay Cash Settlement**

■ The trial transcript is replete with testimony regarding the "creative financing" methods used to develop Husband's business. He was constantly refinancing, purchasing, selling, refurbishing, and renting properties. While Husband's fluid financial picture makes it difficult to assess his resources at any given moment, our

---

**1.** All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

review of the record supports the trial court's determination that Husband had adequate resources to satisfy the judgments entered against him.

Wife's CPA expert and Husband both testified that Husband made more money on his properties than he paid out in expenses. Husband's earnings ranged from $50,000 to $85,000 annually. Husband also had $405,105 in non-marital real estate equity at his disposal. The trial court could consider this substantial asset in assessing the economic circumstances of these parties and in fashioning the awards. *Stratman v. Stratman*, 948 S.W.2d 230, 236 (Mo.App. W.D.1997). Husband could sell or collateralize some of these properties to obtain the cash necessary to equalize the division of marital property.

Other evidence in the record indicates Husband is not unfairly burdened by the court's judgment. On December 27, 2000, in his request to set an appeal bond amount, Husband voluntarily stated his net worth was $500,000. In financial statements filed with the court from September 1998 to December 2000, Husband declared a net worth from a low of $500,000 to a high of $1,279,000.

Husband's credibility in arguing an inability to pay his obligations is not helped by his payment history. Evidence at trial demonstrated his propensity to pay debts only when forced to do so. Husband was summoned to court on multiple contempt motions for failure to pay child support. Prior to May 2000, Husband paid all of the mortgages on his separate rental properties but did not pay mortgages for the marital real estate until ordered to do so by the court. While Husband argues he *will be* forced into bankruptcy as a result of the trial court's determinations, Wife notes he has already filed for bankruptcy protection twice. Both filings occurred immediately after she attempted to exe-

cute on the dissolution judgment. After avoiding the execution dates, Husband voluntarily dismissed both bankruptcy actions. The dismissals undermine Husband's claim that he is unfairly burdened by the trial court's division of property.

### B. Credit Card Debt

■ Husband also argues the $127,000 in credit card obligations was marital debt and should not have been assigned to him. However, when the parties separated in December 1998, Husband reported his total credit card debt was approximately $36,000. By the time he testified at trial in August 2000, the total debt was $138,000. Wife had no access to or control over the credit card during that period. There was evidence that at least a portion of the debt was personal and outside the normal course of Husband's real estate business.

■ "In dividing marital debt, the trial court is vested with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb its division absent a clear showing of an abuse of discretion." *Rivers v. Rivers*, 21 S.W.3d 117, 122 (Mo.App. W.D.2000). Given the testimony and financial documents, the trial court's allocation of the credit card debt to Husband was supported by the record and was not an abuse of discretion.

### C. Attorney's Fees

■ Awarding attorney's fees is a matter within the trial court's discretion. *Graves v. Graves*, 967 S.W.2d 632, 642 (Mo.App. W.D.1998). We must uphold the award unless it is against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice. *Patton v. Patton*, 973 S.W.2d 139, 147–48 (Mo.App. W.D.1998).

■ Wife incurred total attorney fees, just prior to the last day of trial, of $36,656 plus out-of-pocket litigation expenses of $17,141.85. The court's award of $18,000 is less than half of Wife's fees and less than one-third of her expenses.

One of the relevant factors in awarding attorney's fees is the extent to which the fees were incurred due to the opposing party's conduct. *Id.* at 148. The record contains multiple contempt motions for back child support and mortgage payments, which Wife filed as a result of Husband's failure to timely pay. Additionally, Wife was required to hire an expert for assistance in evaluating the real property, which was largely controlled by Husband's business. Under these circumstances, we do not find the trial court's determination to award a portion of Wife's attorney's fees to be an abuse of its discretion.

We presume the trial court considered all the evidence when it divided the marital property. *Nelson,* 25 S.W.3d at 518. The trial court is presumed to have believed the testimony and evidence consistent with its judgment. *Id.* As long as the record contains credible evidence upon which the fact finder could have formulated its beliefs, this court will not substitute its judgment for that of the trial court. *Patton,* 973 S.W.2d at 145. Husband points to nothing in the record that persuades us the trial court did not consider the economic circumstances of each party prior to dividing the marital assets and debts. Nor are we persuaded that awarding a cash judgment and attorney fees to Wife was an abuse of the court's discretion. Husband's first point is denied.

### Point II: Tax Consequences

■ Husband contends the trial court erred in failing to consider the adverse tax consequences resulting from his sale of property order to satisfy the cash obligations immediately due to Wife and the creditors. On appeal, he explains that the "depreciated basis" of the property and the "consequences of recapture" upon sale will "wipe him out financially and force him into bankruptcy."

■ Tax consequences of a dissolution are a factor to consider in making property awards. *Clark v. Clark,* 801 S.W.2d 95, 99 (Mo.App. E.D.1990). The court's consideration of tax consequences is based on the evidence presented at trial. The burden of showing adverse tax consequences of a decree must be established with some particularity at trial if the issue is to be considered on appeal. *In re Marriage of Harrison,* 657 S.W.2d 366, 371 (Mo.App. S.D.1983).

Husband admits he presented no evidence specifically identifying the tax consequences of a court order that would require him to sell property in order to meet cash obligations. He claims, however, that the court should have been able to infer the recapture consequences based on Exhibit 16, which contained more than 300 pages of the parties' tax returns from 1990–1997. Our review of Exhibit 16 reveals that it includes substantial information about the depreciated bases of various properties but no guidance regarding the recapture consequences of a future sale.

Husband's first attempt to explain the relationship between the depreciated basis of the property and the recapture consequences came on appeal. There is no evidence in the record to indicate that the trial court had the benefit of this explanation. Husband failed to meet his burden of establishing the tax consequences with particularity at trial. Accordingly, the issue is not preserved for review on appeal. *Theilen v. Theilen,* 847 S.W.2d 116, 124

(Mo.App. W.D.1992). Husband's second point is denied.

The judgment of the trial court is affirmed.

All concur.