Teresa Sue JINKS, Respondent,

v.

Kenneth Shelley JINKS, Appellant.

No. WD 61814.

Missouri Court of Appeals,
Western District.

Nov. 25, 2003.

Janet L. Burmeister, Independence, MO, for Respondent.

Dennis J. Campbell Owens, James W. McManus, Co–Counsel, Kansas City, MO, for Appellant.

Before JOSEPH M. ELLIS, C.J., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

Kenneth Jinks (Husband) appeals the judgment of the trial court dissolving his marriage to Teresa Jinks (Wife) and dividing the parties' property. He contends that the trial court erred in awarding the parties' home and most of their bank and investment accounts to Wife. The judgment of the trial court is affirmed.

The parties were married on March 28, 1981. No children were born of the marriage. Wife owned a home in Independence before her marriage to Husband, and the couple lived in that home throughout their marriage. Shortly after the couple married, they obtained a $14,000 home equity loan and had a pool installed at the home.

Husband worked for Wilcox Electric when he met Wife. When the company wanted to transfer him to California, Husband resigned. Shortly after the wedding, he began working as an accounting manager at Comprehensive Mental Health Services. He was eventually promoted to finance director and worked at Comprehensive for thirteen years until he retired in 1997.

Wife worked full time as a showroom designer for a fabric company for the first five years of the marriage. When the company closed its Kansas City office, Wife began working part time for the Jackson County Election Board. In 1987, Wife started her own business, a tanning and nail salon. The couple obtained a $40,000 home equity loan to finance the business. Wife owned the salon until 1995.

After twelve years of marriage, Wife executed a quit claim deed in 1993 titling the Independence home in both parties' names. In 1995, Wife discovered that Husband was having an affair and filed for divorce. The couple reconciled. Husband convinced Wife to sell her business so they could spend more time together and because it was not profitable. Wife, however, continued to work out of her home as a licensed nail technician two days a week until the time of trial.

In May 2001, Wife suspected Husband was having another affair. Two months later, Husband told Wife that he was unhappy in the marriage and that he wanted a divorce. Shortly thereafter, Wife filed her petition for dissolution of marriage. Husband filed a counter petition.

Following a trial, the court entered its judgment dissolving the parties' marriage. It valued the Independence home at $145,000 and classified $95,000 of it as Wife' nonmarital property and the remaining $50,000 as marital property. It found that Wife presented clear and convincing evidence at trial that she did not intend a gift to the marriage when she titled the home in both parties' names in 1993. The trial court awarded Wife the marital portion of the home along with a time share, her car, checking and savings accounts, life insurance policy, personal property, and four investment accounts for a total value of $267,212. It also set aside to her $8,650 of the marital debts.

The trial court awarded Husband marital property consisting of a lake house, two time shares, two automobiles, two boats, a Cesna airplane and a hanger, a checking account, life insurance policy, and personal property with a total value of $280,285. The court ascribed to him $58,250 of the marital debt, most of which included the mortgage on the lake house. In dividing the marital assets as it did, the trial court found that Husband had two extramarital affairs and that during the pendency of the action throughout 2001, he intentionally squandered approximately $77,500 of marital assets.

This appeal by Husband followed.

## Standard of Review

In a dissolution proceeding, the judgment of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Henning v. Henning*, 72 S.W.3d 241, 245 (Mo.App.

W.D.2002). The trial court has broad discretion in classifying and in distributing marital property. *Runge v. Runge,* 103 S.W.3d 804, 808 (Mo.App. E.D.2003); *Henning,* 72 S.W.3d at 245. An appellate court will only reverse the trial court's division of property if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion. *Henning,* 72 S.W.3d at 245.

### Independence Home

In his first point on appeal, Husband claims that the trial court erred in awarding Wife the Independence home. The trial court classified $95,000 of the home as Wife's nonmarital property. It classified the remaining $50,000 as marital property and awarded it to Wife. Husband contends that the entire value of the home was marital because after the marriage, the home was jointly titled in both parties' names and because he paid off substantial debts on the home.

Property is non-marital if one spouse owned it before the marriage and retained separate title to it after marriage. *DeMayo v. DeMayo,* 9 S.W.3d 736, 742 (Mo.App. W.D.2000). Under the theory of transmutation, a spouse may transmute a piece of separate property to marital property by express or implied agreement or by gift.[1] *McAllister v. McAllister,* 101 S.W.3d 287, 293 (Mo.App. E.D.2003). Placing separate property of a spouse into the joint names of both spouses creates a rebuttable presumption that the property has been transmuted into marital property. *DeMayo,* 9 S.W.3d at 742. This presumption can only be rebutted with clear and convincing evidence that the owner spouse did not intend to convert the property to marital property. *Id.* Clear and convincing evidence is evidence that "instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Montgomery v. Montgomery,* 18 S.W.3d 121, 124 (Mo.App. S.D. 2000). Parol evidence is admissible to show the parties' intent; however, self-serving testimony that a spouse did not intend to transmute separate property to marital property is entitled to little weight. *Schroeder v. Schroeder,* 924 S.W.2d 22, 28 (Mo.App. E.D.1996).

In this case, Wife owned the Independence home prior to the marriage. Approximately twelve years into their marriage, Wife executed a quit claim deed titling the home in both her and Husband's names. This action created a rebuttable presumption that the home transmuted into marital property. The issue, therefore, is whether Wife presented clear and convincing evidence that she did not intend to transmute the property. Wife testified that she felt forced to sign the new deed because, at the time of the conveyance, she was in poor health and unable to pay the taxes and insurance on the home. She explained that Husband told her he would not pay the taxes and insurance unless she put his name on the title. Husband confirmed at trial that he told Wife that if he had to pay the taxes, insurance, and home equity loan payments on the home he wanted his name on the title. Based on this evidence, the parties intended the transfer to be a business transaction rather than a gift. Fearing she would lose the property because she could not pay the taxes and insurance, Wife perceived Husband's payment of those expenses to be consideration in exchange for her titling

---

1. "There is no conflict between the source of funds rule and transmutation; they are merely relevant in different factual situations."

*Williams v. Williams,* 965 S.W.2d 451, 454 (Mo.App. W.D.1998).

the home in the parties' joint names. Whether Husband's payment of the home's insurance and taxes was actually proper consideration is questionable, however. While Husband testified that he paid off the home equity loans and the taxes and insurance on the home, nothing in the record indicates that these were paid with anything other than the income he earned during the marriage, which is presumed to be marital property.[2] § 452.330.3, RSMo 2000; *King v. King,* 66 S.W.3d 28, 35–36 (Mo.App. W.D.2001)(property acquired during marriage, including income earned by a spouse, is presumed to be marital property, and party claiming that the property is separate property bears burden of proving property is separate property by clear and convincing evidence).

Whether clear and convincing evidence was presented to rebut the presumption that the Independence home was converted to marital property and, thus, whether the trial court erred in classifying a portion of the home as Wife's nonmarital property need not be decided. Error in classifying property is not necessarily prejudicial unless it materially affects the merits of the action. *Montgomery,* 18 S.W.3d at 125; *In re Marriage of Jennings,* 910 S.W.2d 760, 765 (Mo.App. S.D.1995). "Although transmutation determines the character of property (whether it is marital or separate), it does not determine the division of the property (how much should be apportioned to each spouse)." *DeMayo,* 9 S.W.3d at 742. The mere erroneous classification of property, where the decree is nonetheless fair, will not require a reversal. *Burk v. Burk,* 936 S.W.2d 144, 145 (Mo.App. S.D.1996)(quoting *In re Marriage of Garrett,* 654 S.W.2d 313, 316 (Mo. App. S.D.1983)). Thus, in this case, even if

the entire value of the home was marital property, the misclassification of part of it as Wife's separate property did not render the trial court's distribution of property unfair for the reasons specified in the discussion of Husband's next two points.

**Bank and Investment Accounts**

In his second and third points on appeal, Husband claims that the trial court erred in awarding most of the parties' bank and investment accounts to Wife. He contends that the evidence of his misconduct did not justify a disproportionate division in property and that he contributed much more to the acquisition these funds.

Section 452.330.1, RSMo 2000, governs the trial court's distribution of property in a dissolution proceeding. Under the statute, the trial court must first set aside to each spouse his or her non-marital property and then divide the marital property and debts in such proportions as the court deems just. § 452.330.1, RSMo 2000; *Bohon v. Bohon,* 102 S.W.3d 107, 109 (Mo.App. W.D.2003). The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Bohon,* 102 S.W.3d at 109–10 (quoting *Ballard v. Ballard,* 77 S.W.3d 112, 116 (Mo.App. W.D. 2002)). The trial court shall consider all relevant factors in dividing marital property including:

> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

---

**2.** Wife also testified that the original mortgage, the taxes, and insurance were paid from the parties' joint account.

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1, RSMo 2000. These factors are not exclusive, and no formula exists for determining the weight to be given to the factors in dividing the marital property. *Bohon*, 102 S.W.3d at 110.

The trial court awarded Wife marital property valued at $267,212 and set aside to her $8650 in marital debt for a net value of $258,562 or 54% of the marital property. The court awarded Husband marital property valued at $280,285 with debt of $58,250 for a net value of $222,035 or 46% of the marital assets. If the entire value of the Independence home is considered marital, Wife was awarded marital property with a net value of $353,562 or 61% of the marital assets.

 Husband first argues that the evidence of misconduct cited by the trial court, specifically two extramarital affairs and the squandering of marital assets in anticipation of divorce, did not justify the disproportionate division. Misconduct by a spouse may not be used to punish that spouse by awarding a disproportionate share of the marital estate to the other spouse. *Id.* at 111. Instead, marital misconduct is a factor in property division when the offending conduct places extra burdens on the other spouse. *McNair v.*

*McNair*, 987 S.W.2d 4, 6 (Mo.App. W.D. 1998). "It is only when misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership load that it is appropriate that such misconduct can affect the distribution of property." *Id.* at 6–7. (citation omitted). The added burden placed on a spouse does not have to be a financial one. *Bohon*, 102 S.W.3d at 111. Extramarital affairs have been held to justify a disproportionate division of marital property. *Id.*; *Ballard v. Ballard*, 77 S.W.3d 112, 117–18 (Mo.App. W.D.2002)(citing several cases with such holding). However, evidence of an extramarital affair alone is insufficient to justify a disproportionate division. *Bohon*, 102 S.W.3d at 111–12. Instead, the non-offending spouse must present evidence of specific burdens that she has suffered as a result of such conduct. *Id.* at 112.

Husband admitted at trial that he had an extramarital affair in 1995. He denied that he had a second affair at the end of the marriage.[3] Clearly, Husbands extramarital affair was misconduct. He argues, however, that the one affair over the course of the twenty-year marriage did not justify an unequal division of property because the affair allowed the parties to resolve underlying problems in the marriage, specifically, that Wife spent too much time working in her business and not enough time with him. Husband ended the affair and asked Wife to forgive him. He also asked Wife to retire, and Wife agreed to sell her business in an attempt to "save the marriage." Whether Wife's giving up her business constituted a burden that she suffered as a result of Husband's extramarital affair need not be decided because the affair was not the only evidence of mis-

---

**3.** Wife testified that she suspected Husband was having another affair in May 2001 when she found pictures of a women in Husband's locked briefcase and a change of clothes and a bottle of Viagra in his truck. Whether this evidence was sufficient to support the trial court's finding that Husband had a second extramarital affair in 2001, however, need not be decided for reasons discussed.

conduct by Husband. Evidence was also offered that Husband secreted or squandered marital assets in anticipation of divorce.

"[W]here a party has intentionally secreted or squandered an asset in anticipation of divorce, the trial court may hold that party liable for the value of the asset by awarding it to the party." *Luckeroth v. Weng*, 53 S.W.3d 603, 609 (Mo. App. W.D.2001)(quoting *McGowan v. McGowan*, 43 S.W.3d 857, 866 (Mo.App. E.D.2001)). "This effectively reduces that party's property award by the squandered amount." *Wright v. Wright*, 1 S.W.3d 52, 62 (Mo.App. W.D.1999). However, marital property used by a spouse for his living expenses after separation and prior to the dissolution hearing is a legitimate expenditure of marital assets. *Id.*

The spouse claiming that a marital asset is being secreted or was squandered by the other spouse in anticipation of a dissolution proceeding must introduce evidence demonstrating that at some point the marital asset existed and that it was being secreted or had been squandered. *Conrad v. Conrad*, 76 S.W.3d 305, 315 (Mo.App. W.D.2002). Thereafter, the burden shifts to the other spouse to "account" for the claimed secreted or squandered asset by presenting evidence as to its whereabouts or disposition. *Id.*

Wife produced evidence at trial that during the parties' separation in 2001, Husband withdrew $13,000 from one investment account and $26,430 from another. Wife also presented evidence that during that time, Husband sold the parties'

Mercedes for $17,500 and two scooters for $5,000. Finally, evidence was presented that Husband received $15,624 in social security payments in 2001. At trial, Wife claimed that these sums totaling $77,554 were unaccounted for. Husband argued that he used the proceeds for his living expenses that year. The only admissible evidence presented by Husband regarding the disposition of the assets was his testimony that he gave Wife $1,000 when they separated and that he paid her maintenance of $975 per month for three months for a total of $3925.[4] A sum of $73,629, therefore, remained unaccounted for.[5]

[24] Finally, in claiming that the trial court erred in distributing property, Husband contends that he contributed more to the acquisition of the marital property. He argues that the business Wife owned from 1987 to 1995 made virtually no profit and that he had to pay the loan payments on it. In his argument, Husband cites the case, *Brown v. Brown*, 14 S.W.3d 704 (Mo. App. S.D.2000), wherein Husband challenged the trial court's division of property. In analyzing the parties' contributions to the acquisition of the marital property, the Southern District noted that Wife maintained steady employment and drew a steady income throughout the marriage, she also contributed to the marriage as the homemaker, Husband's contribution to the marital finances was not as dependable nor as significant, his farming activities never yielded an income for the family, and his farming activities actually lost approximately $80,000 causing the couple to borrow significant sums to finance the farm. *Id.* at 708. The instant case is distinguish-

4. Husband sought to introduce into evidence an exhibit summarizing the expenditures he made with the money. The trial court found the exhibit inadmissible because Husband could not provide the supporting documentation for the summary. Husband does not raise the trial court's exclusion of this exhibit as a point on appeal.

5. If Husband were held liable for the missing $73,629, his award of marital property would be $295,664 or 46% of the marital assets.

able from *Brown.* The evidence shows that both parties were employed throughout the marriage until their respective retirements in 1994 and 1995. While Wife's business was not hugely successful, the business generated enough income to pay for overhead expenses including the business loan and showed small profits for some years. Furthermore, Husband cannot now complain that the couple had to deplete marital assets [6] to pay off the business loan where the evidence shows that Wife sold her business at Husband's request before the business loan was fully paid in an attempt to save her marriage after she discovered Husband was having an extramarital affair. Finally, in addition to Wife's contributions to the acquisition of marital property through her employment, she brought the $145,000 home to the marriage.[7]

Based on the circumstances in this case, the trial court's division of marital property was fair and equitable and was not so unduly weighted in favor of Wife so as to constitute an abuse of discretion.

The judgment of the trial court is affirmed.

ELLIS, C.J. and HOLLIGER, J. concur.

---

6. Husband claims that he paid off the remaining business loan after the business was sold but, again, nothing in the record indicates that this loan was paid with anything other than income earned during the marriage, which is marital property.

7. At the time of the wedding, the home had only a small mortgage of less than $10,000 remaining.