Wendy C. ANDREWS, Respondent,

v.

Jeffrey M. ANDREWS, Appellant.

No. ED 90797.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 12, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 15, 2009.

Application for Transfer Denied
Sept. 1, 2009.

Maia Brodie, Clayton, MO, for respondent.

Jeffrey K. Elnicki, St. Louis, MO, for appellant.

CLIFFORD H. AHRENS, Judge.

Jeffrey M. Andrews ("husband") appeals the judgment of dissolution dissolving his marriage to Wendy C. Andrews ("wife").

Husband argues the trial court erred in several respects concerning the determination of husband's income for purposes of calculating child support. Husband also claims the court erred in awarding wife a sum for her fifty percent interest in a loan payable to the marital estate, attorney's fees, and a sum for her separate property interest in a 2004 Nissan Armada. Finally, husband argues the court erroneously calculated wife's income in determining the child support obligation. We affirm the judgment as modified.

Husband and wife were married in September 2001. They separated in April 2006, and wife subsequently filed a petition for dissolution. The trial court entered findings of fact, conclusions of law, and judgment of dissolution of marriage. The court awarded joint physical and legal custody of husband and wife's children, and ordered husband to pay $2,393.00 per month in child support to wife. The court granted husband one hundred percent interest in his business, JMA Enterprises, Inc. ("JMA"). Wife was awarded a sum of $21,500.00 as fifty percent of a loan payable to the marital estate from JMA. Wife was also awarded $10,000.00 for her separate interest in a 2004 Nissan Armada ("the Nissan"). The court also ordered husband to pay $21,317.50 for wife's attorney's fees. Husband filed a motion to amend the judgment, which was not ruled upon by the trial court, deeming it denied pursuant to Missouri Supreme Court Rule 81.05 [1]. The present appeal followed.

We review the trial court's judgment of dissolution and will affirm such judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it either erroneously declares or applies the law. *Bridgeman v. Bridge-*man, 63 S.W.3d 686, 689 (Mo.App.2002). We view the evidence and inferences therefrom in the light most favorable to the judgment of the trial court, and we disregard evidence and inferences to the contrary. *Id.* "We defer to the trial court's determination of the credibility of the witnesses." *Id.*

Husband asserts numerous claims on appeal. The first four points of husband's appeal concern the trial court's determination of husband's annual gross income for purposes of calculating his child support obligation. Point one asserts a general claim of error in the trial court's determination of husband's income based upon all deposits made to the parties' bank accounts. Husband claims the trial court should have calculated his support obligation based upon the amount of income reflected on his 2006 federal income tax return which reports his income as $26,000.00. However, at trial wife introduced evidence of deposits made into their joint bank account, husband's individual account, and payments made for household expenses from the business account for JMA. The trial court found this evidence credible, and based upon the amounts deposited in the two bank accounts and paid from the business account for household expenses, the court found husband's evidence concerning his income not credible. The court concluded husband's gross income was $179,229.05. The court used this amount to calculate the monthly child support obligation of $2,393.00 per month for the parties' two minor children.

■ Based upon the evidence, substantially more than the $26,000.00 reported on husband's 2006 income tax return was deposited into the various accounts of the

---

1. Rule 81.05(a)(2)(A) states a timely filed after-trial motion is deemed overruled ninety days from the date of filing if not ruled upon.

parties. In addition, there was significant evidence of household expenses which far exceeded the income reported on husband's income tax return. Wife testified that based upon the amount of money they spent and the amounts she saw going into their bank accounts, she believed husband's gross income was around $179,000.00 per year. In fact, according to wife, husband told her he was lying about his income on his tax returns. As a result, the trial court was within its discretion to consider the additional deposits and household expenses in determining husband's gross income for purposes of calculating child support.

Husband attempts to distinguish two relevant cases regarding attributing income to spouses owning corporations by arguing that in this case there was no evidence the deposits derived from any "income producing activity" to render them income; however, his argument fails. In both *Franklin v. Franklin*, 213 S.W.3d 218 (Mo.App.2007) and *Boudreau v. Benitz*, 827 S.W.2d 732 (Mo.App.1992), the court imputed significant income to the husbands based upon banking information and expenditures by the husbands. In both cases the court of appeals held that based on the evidence the trial court did not err in attributing an increased income to the husbands. *Franklin*, 213 S.W.3d at 225; *Boudreau*, 827 S.W.2d at 734. As in *Franklin* and *Boudreau*, husband in the present case was the sole shareholder in JMA. Similarly, here, as in *Franklin* and *Boudreau*, the trial court reviewed evidence of amounts in the parties' bank accounts, as well as evidence of expenses in light of husband's claimed income. Based upon this evidence, the court determined husband's evidence concerning his income was not credible and found his gross income to be more than the amount reported on his tax return. As discussed above, the trial court did not abuse its discretion in doing so. Point denied.

In his second and third points on appeal, husband argues specific items were erroneously included as income. Husband claims the trial court should not have included gifts made by the parties' parents, child support received by wife from a former husband, federal tax refunds, loan repayments to husband from JMA, transportation reimbursements made to husband for use of his personal vehicle for business purposes, and gross receipts from husband's sole proprietorship. He also argues the trial court should not have treated payments made by JMA to Gary Andrews, husband's father, as income. We consider each individual item of income separately.

■ First, we look at the gifts made by the parties' parents. The court specifically found husband's testimony concerning his income not credible. We defer to the court's finding regarding credibility. *Bridgeman*, 63 S.W.3d at 689. Therefore, we look to other evidence concerning gifts made to the parties by their parents. Wife testified husband's parents gave them money toward a vacation to Florida and money for Christmas one year. According to wife; however, while they may have deposited some money received from her mother, they did not always deposit monetary gifts they received into their bank account. In addition, Robin Kaiser, an attorney, testified she reviewed the deposits in several bank accounts and prepared summaries of the amounts deposited in various accounts, as well as the amounts spent on household expenses. She stated she would not have been able to determine whether money deposited into the accounts was from monetary gifts. As a result of Kaiser's testimony and wife's testimony, there was not substantial evidence to support a conclusion that the monetary gifts

given to the parties by either of their parents were deposited into a bank account. Therefore, the court did not improperly include these amounts in determining husband's gross income.

Moreover, the trial court's conclusion regarding husband's income was supported by substantial evidence, even excluding amounts from monetary gifts received by the parties. As previously noted, there was a significant amount of money deposited in the parties' joint account. Wife testified she managed the joint account, and she regularly transferred funds from husband's business account to their joint account to pay household expenses. Wife also stated husband regularly carried substantial amounts of cash with him. Based upon wife's observations, she opined husband's annual income was $179,000.00. As a result of wife's testimony, there was substantial evidence to support the trial court's conclusion with respect to husband's income, even absent amounts from monetary gifts.

■ Next, we consider the inclusion of child support received by wife from her former husband. The parties do not dispute wife received $600.00 per month in child support from a former husband for her children from a previous marriage. Wife testified the amounts deposited in the joint bank account did include this child support, and Kaiser testified she did not subtract this amount from her calculation of the deposits to the parties' joint account. While this amount would have been improperly attributed to husband as income, the trial court's conclusion regarding husband's income was supported by substantial evidence even excluding wife's child support. As noted above, wife testified husband "always" carried several hundred dollars in his pocket. This, coupled with wife's testimony that husband acknowledged he was "lying" about his income,

supports the trial court's conclusion that husband earned more than the $26,000.00 reported on his tax return. There was substantial evidence that husband's cash-based business resulted in a greater income than reported on his tax return. Based upon wife's testimony, there was substantial evidence to support the trial court's conclusion regarding husband's income, even excluding amounts deposited into the parties' joint account for wife's child support from her former husband. "As long as the record contains credible evidence upon which the fact finder could have formulated its beliefs, this court will not substitute its judgment for that of the trial court." *Alongi v. Alongi,* 72 S.W.3d 592, 597 (Mo.App.2002).

■ We also consider whether federal tax refunds were improperly included in the determination of husband's gross income. Although wife initially testified tax refunds would be deposited into the joint account, wife later stated she did not remember whether the amount the parties received from their tax refund in 2005 was deposited into the joint account. Wife subsequently testified she did not believe the amount was included in her estimation of husband's gross income. In addition, Kaiser testified she could not determine whether any deposit was made from a tax refund when she reviewed the deposits in the various bank accounts and prepared the summaries. Thus, absent evidence the tax refund was deposited into the joint account; the trial court could not erroneously include such amount in its calculation of husband's gross income. Also, as stated above, even excluding any amount for a tax refund, there was substantial evidence from wife's testimony concerning husband's income to support the trial court's conclusion in that regard.

■ In addition, we look at the loan repayments to husband from JMA. Wife

specifically testified there was no loan repayment from the business to husband deposited into the joint account. She was not aware of any money coming from JMA into the joint account. Absent evidence that the loan repayments were actually deposited into the accounts, such amounts could not be improperly included in the calculation of husband's gross income.

■ Husband also argues amounts given to him by JMA for reimbursement of transportation expenses incurred using his personal vehicle for business purposes were improperly included in the calculation of his gross income. According to wife, she was aware the company reimbursed husband for his transportation expenses; however, she was not aware that any money came from the company into the joint account. Kaiser testified she did not know if transportation reimbursements were included in the deposits she summarized. As a result, no evidence of whether transportation reimbursement amounts were included in the deposits to the joint accounts was introduced. Absent evidence that the transportation reimbursement was deposited in the parties' joint account, we cannot conclude the court erroneously included it in its determination of husband's income.

■ Next we consider whether gross receipts from husband's sole proprietorship were erroneously included in his income. As wife notes, there was little evidence of husband's sole proprietorship presented at trial. There was a brief mention of a "sign business" and "side thing" husband was involved in during his testimony at trial, as well as tax documents reflecting income and expenses from a business; however, there was no evidence of any deposits to the parties' accounts as a result of any income from such business. Thus, the trial court did not erroneously include it in its calculation of husband's gross income.

Finally, we consider whether payments made by JMA to Gary Andrews were erroneously included in determining husband's income. Kaiser included payments made to Gary Andrews in her summary of deposits and expenses from the parties' various accounts. She testified she attributed any payments made to Gary Andrews beyond what JMA's balance sheet reflected as repayment of the business loan to household expenses. In light of the testimony from husband that his parents assisted with household expenses when necessary, this was a reasonable conclusion and the trial court was within its discretion to include these payments in determining husband's gross income.

Based upon the foregoing, the trial court's determination of husband's gross income was supported by substantial evidence and was not against the weight of the evidence. Therefore, the court did not abuse its discretion in calculating husband's child support obligation using a gross income based upon the evidence presented. Point denied.

■ In his fourth point on appeal, husband claims the court erred in "grossing up" his income by applicable tax rates. Kaiser testified she "grossed up" the total amount of deposits to the parties' joint account by combined state and federal tax rates on the tax tables. She did this because the income from the deposits would be net income so she wanted to determine a gross amount. Husband did not present any evidence to refute this assertion. The gross income was necessary to calculate child support pursuant to the Form 14, and therefore, the trial court did not abuse its discretion based upon wife's evidence in determining husband's gross income to be $179,225.05. Point denied.

In his fifth point, husband argues the trial court erred in awarding wife a sum

representing fifty percent of her share of a loan payable to the marital estate from JMA. Husband notes his argument is not that wife should not receive fifty percent of the loan, but instead that the loan should have been divided in kind because he does not have the financial ability to pay.

■ The trial court has discretion to award cash payments to effect a just division of marital property. *Alongi*, 72 S.W.3d at 595. As husband notes, this method is typically used where it is impossible or imprudent to divide a piece of property in kind. *Id.* A court, as the trial court did here, may also order periodic payments if a party is unable to make a lump sum payment. *Id.*

■ The trial court awarded wife $21,500.00 as her half of the loan payable to the marital estate by JMA. The court ordered husband to pay the award in installments of $5,375.00 within sixty days of the entry of judgment, and three consecutive yearly installments of $5,375.00. Husband argues he does not have the ability to pay this award; however, this is refuted by the record before us. As previously discussed, the trial court found husband's evidence concerning his income not credible. In addition, the court noted husband failed to include the loan on his statement of property. The trial court's decision to make a monetary award instead of dividing the loan in kind was well within the trial court's discretion considering husband's failure to disclose the loan on his statement of property, and the court's finding that husband's evidence concerning his income was not credible. Point denied.

■ In his sixth point, husband claims the court erroneously awarded wife $10,000.00 for her separate interest in the Nissan. According to husband, wife intended to convert her separate interest in the vehicle to marital property.

■ Pursuant to section 452.330 RSMo (2000)[2], the trial court "shall set apart to each spouse such spouse's nonmarital property," and shall divide the remaining marital property as it deems just after consideration of the relevant factors. The court has broad discretion in classifying and dividing marital property. *Moore v. Moore*, 189 S.W.3d 627, 632 (Mo.App.2006).

At trial, wife testified her mother purchased a minivan for her prior to the marriage. The court found the minivan was wife's separate property. Wife testified when she and husband purchased the 2004 Nissan Armada, they traded in her minivan to obtain a $10,000.00 credit toward the purchase of the Nissan. Based upon this evidence, the trial court awarded wife $10,000.00 for her separate interest in the Nissan.

■ Husband claims the fact that the Nissan was titled in both his and wife's names, as well as the fact that he made the payments on the vehicle during the marriage evidenced wife's intent to transfer her separate property into marital property. "Placing separate property of a spouse into the joint names of both spouses creates a rebuttable presumption that the property has been transmuted into marital property." *Jinks v. Jinks*, 120 S.W.3d 301, 305 (Mo.App.2003). The spouse owning the separate property can overcome this presumption with clear and convincing evidence that he or she did not intend to convert the property to marital property. *Id.* Clear and convincing evidence is evidence that when weighed against the evidence in opposition leaves the fact finder with the belief that the evidence is true. *Id.*

---

**2.** All further statutory references are to RSMo (2000).

Here, wife testified she drove the Nissan during the marriage. After their separation, husband called and informed wife the vehicle was going to be repossessed. Wife returned the Nissan to husband and later found out the vehicle was not repossessed. Instead, husband traded the vehicle in with another car and purchased a new vehicle for himself. Wife testified she would not have traded in the Nissan but would have kept the car and paid off the loan to recoup the money from her mother's gift of the minivan. Husband did not dispute wife's testimony concerning her intent to keep the car and recoup her separate interest. Generally "self-serving testimony" that the spouse did not intend to transmute separate property into marital property is given little weight. *Jinks,* 120 S.W.3d at 305. However, here when considered in light of the evidence in the record as a whole, or lack thereof, the trial court was acting within its discretion in crediting wife's testimony concerning her intent regarding her separate property.

In addition, section 452.330.4 specifically states that nonmarital property does not become marital property solely because it is commingled with marital property. Instead, once commingling occurs, the party claiming a separate property interest must establish by clear and convincing evidence that an identifiable portion can be traced to specific separate property. *Moore,* 189 S.W.3d at 637–38.

Here, although wife did commingle her separate property with marital property, there is clear and convincing evidence of an identifiable portion of the marital property that can be traced to wife's separate property. Wife testified she owned the minivan prior to the marriage and it was used for a $10,000.00 credit toward the purchase of the Nissan. Husband points to the fact that wife included the Nissan in her statement of property as marital property as evidence of her intent to convert her separate property into marital property with the trade-in of her minivan; however, husband's argument fails. Again, we note once commingling occurs, the party claiming a separate property interest must establish by clear and convincing evidence that an identifiable portion can be traced to specific separate property. *Moore,* 189 S.W.3d at 637–38. Here, the fact that the Nissan itself was classified as marital property generally by wife does not negate the clearly identifiable separate property interest she maintained in the vehicle.

As a result of the foregoing, there was substantial evidence to support the trial court's award of $10,000.00 to wife for her separate property interest in the Nissan. Point denied.

In his seventh point on appeal, husband claims the court erred in ordering him to pay wife's attorney's fees in the amount of $21,317.50. Husband argues the court failed to consider the parties' ability to pay.

Section 452.355.1 allows the court to order a party to pay attorney's fees after "considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action...." The trial court is vested with broad discretion in this regard, and we will reverse the award of attorney's fees only if the court has abused its discretion. *Adair v. Adair,* 124 S.W.3d 34, 40 (Mo.App.2004).

Husband claims the trial court did not consider the financial resources of the parties in ordering him to pay wife's fees. He argues wife earns a greater income than he does and has greater ability to pay her own fees. Husband's argument is premised upon evidence that wife earned an income of $30,000.00 per year while he earned $26,000.00 per year. However,

husband uses the amount from his income tax return for 2006 to make this argument. As discussed above, the trial court concluded husband earned a significantly higher amount of income, and we affirm the court's decision in this regard. Based upon this increased income, the trial court could reasonably conclude husband had a greater ability to pay attorney's fees.

In addition, we note wife argues husband's actions during the pendency of the proceedings resulted in increased fees. Pursuant to section 452.355.1, husband's actions while the case is pending would be a relevant factor for the trial court to consider when ordering husband to pay wife's attorney's fees. Wife testified the process was "drawn out" and she was unable to obtain certain documents ordered by the court. The record supports this testimony. Wife filed two motions to compel and motions for sanctions. Both motions were granted by the trial court and husband was ordered to produce certain financial information and bear the costs of production. Based upon the evidence of husband's actions, as well as the evidence concerning his financial situation, the trial court did not abuse its discretion in ordering husband to pay $21,317.50 of wife's attorney's fees. Point denied.

In his eighth and final point, husband asserts error in the trial court's calculation of wife's income. Husband claims the court failed to properly reduce wife's income on the Form 14 calculation by the amount received as child support for her children from a former husband.

Pursuant to Rule 88.01(b), there is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the correct amount of child support to be awarded. In the present case, the trial court adopted wife's Form 14 calculation and ordered husband to pay $2,393.00 per month in child support to wife. However,

line 2c of the Form 14 requires an adjustment to a party's monthly gross income for "[s]upport obligation for other children in parent's primary physical custody." The Directions, Comments for Use and Examples for Completion of Form No. 14 in the Missouri Supreme Court Rules of Civil Procedure direct parties to include the monthly amount of support obligation of the parent for children in his or her primary physical custody but who are not the subjects of the current proceeding. The directions and comments also contain a caveat which states, "[t]he adjustment for a child for whom there is an existing court or administrative order shall be reduced by the amount that is actually being paid in current support payments." In the present case, the parties do not dispute that wife received $600.00 per month in child support from her former husband for children from the previous marriage. The amount contained on line 2c of the Form 14 should have been reduced by the $600.00 per month wife receives. This reduction would result in an increase of wife's adjusted monthly gross income on line 3 of the Form 14 by the $600.00 per month she receives in child support from her former husband for wife's children from the former marriage.

Pursuant to Rule 84.14, we may give "such judgment as the court ought to give," and dispose of the case. The court of appeals may enter the judgment that should have been entered by the trial court instead of remanding the action, particularly where there is no factual dispute but only a dispute as to the legal significance of those facts. *Mitalovich v. Toomey,* 206 S.W.3d 361, 365 (Mo.App.2006).

The trial court used $806.00 for wife's support obligation for the other children and did not reduce this amount by the $600.00 she received from her former husband. Thus, the proper adjustment to

wife's monthly gross income on line 2c would have been $206.00. Using this adjustment amount we recalculated the presumed child support amount on the Form 14 and arrived at a modified monthly support obligation of $2,321.00, instead of the $2,393.00 ordered in the trial court's judgment. As a result, the judgment should be modified to reflect a child support award of $2,321.00 per month.

The judgment is modified, as noted above, to reflect an award of child support of $2,321.00 per month, pursuant to Rule 84.14. The judgment of the trial court as modified is affirmed.

ROBERT G. DOWD, JR. and SHERRI B. SULLIVAN, JJ., concur.